BC

RECEIVED
5/12/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
MAM

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN A. CROFOOT, | ) | |
| Plaintiff, | ) | **Case No.** 1:26-cv-05025 |
| | ) | |
| v. | ) | **Judge:** Martha M. Pacold |
| | ) | **Magistrate Judge:** Maria Valdez |
| COOK COUNTY, ILLINOIS | ) | |
| Defendant. | ) | |
| | ) | |

# FIRST AMENDED COMPLAINT

### I. TO THE HONORABLE JUDGE AND JURY:

1. Plaintiff Brian A. Crofoot, pro se, brings this First Amended Complaint to add facts, evidence, and new claims that arose after the original filing on April 30, 2026. The original Complaint is incorporated by reference as if fully set forth herein.

### II. JURISDICTION AND VENUE

2. This action arises under 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment rights and related state-law claims arising from a common nucleus of operative facts.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

### III. PARTIES

4. Plaintiff **Brian A. Crofoot** is a resident of Chicago, Illinois, and was employed as an Environmental Engineer II by the Cook County Department of Environment and Sustainability from May 5, 2025 until his resignation on May 9, 2026 due to intolerable retaliation.

5.  Defendant **Cook County** is an Illinois municipal corporation.

## IV. DEMAND FOR TRIAL BY JURY

6.  Plaintiff exercises his Constitutional right to a trial by jury on all issues.

## V. FACTS

7.  On January 19, 2026, Plaintiff filed a federal RICO complaint in this District (Case No. 1:26-cv-00672). That complaint included **Marquee Exhibits (**docketed February 12, 2026) documenting photographic evidence of a drenched 200-amp electrical panel directly above a gas main in a multi-residential building, coordination letters between the defendants, and related racketeering activity (the *"Protected Activity"*).

8.  On March 12, 2026, Plaintiff filed an amended RICO complaint that expressly named Director Malec-McKenna in connection with adverse actions.

9.  Immediately after the Protected Activity, and in direct response to it, Defendant engaged in a continuing pattern of adverse employment actions, including but not limited to those documented in *Exhibit F* (docketed March 20, 2026) and the subsequent actions detailed below.

### A. Post-Filing Retaliation (April 30- May 8, 2026):

10. After Plaintiff filed the original §1983 Complaint on April 30, 2026, Defendant escalated retaliation, culminating in Plaintiff's voluntary resignation on May 9, 2026 due to the intolerable retaliatory environment. Specific post-filing adverse actions include *(Exs. B, G):*

    a.  May 5–6, 2026: Third-party vandalism (slashed tire on assigned county vehicle in the employee lot) → immediate report to Jacqueline Diaz → repair blocked until Plaintiff signed a 5-page Vehicle Incident Form that pre-loads disciplinary checkboxes and gives the supervisor and Director full discretion to declare him

responsible (contrary to the Cook County Driver Agreement, which addresses accidents/collisions, not third-party vandalism). Jacqueline Diaz confirmed the tire incident is *"separate."* Economic coercion (Plaintiff owns no personal vehicle; three other DES pool cars were available in the same lot).

b. May 6, 2026 (end of day): Plaintiff captured a screenshot of the OnBase interface completely disabled (*"The User interface is currently disabled"*) immediately after Chris's 3:33 PM email falsely claiming *"the issue was resolved." **(Exhibit G).***

c. May 7, 2026: Two back-to-back OnBase meetings. Plaintiff declined to share his screen. Stefano Pannone confirmed twice on the record that *"the code is different between users and Clarity did not know how to fix it."* Liz Davis verified the issues live in front of Chris. Chris refused to demonstrate the Time & Mileage process.

d. May 7, 2026 2:00 PM Written Reprimand / Final Warning Meeting: Director Suzanne Malec-McKenna personally signed a Written Reprimand for *"Insubordination, May 5, 2026"* based on Plaintiff's protected May 5 email declining the disciplinary meeting ***(Exhibits A-1 and A-2).*** Director admitted seeing the email. Jacqueline Diaz confirmed the tire incident is *"separate."* Chris warned *"next time is termination."* SEIU Deputy Director Carmen Nowitzki stated on the record that *"we can win a grievance just with the already docketed Exhibit F alone."*

e. May 8, 2026: Chris sent damage-control emails announcing Clarity Partners would independently replicate the OnBase issue and arranging a tow of the slashed-tire vehicle for Monday, May 11, while canceling the Monday OnBase meeting.

**B. License Manipulation and Suspicious Timing (October 2025 – February 4, 2026)**

11. In October 2025, months before Plaintiff filed any federal lawsuit, the Illinois Department of Public Health (IDPH), in coordination with Plaintiff's then-manager Renante Marante, issued Plaintiff's asbestos inspector professional license bearing a photograph of five kittens instead of a standard professional headshot *(Exhibit E-1).*

12. When Plaintiff filed his RICO action in January 2026, Christopher Antonopoulos immediately and publicly accused Plaintiff of *"kitten fraud,"* falsely claiming that Plaintiff had fraudulently obtained or altered his own professional license. In reality, the kitten photograph had been placed on the license by IDPH with the knowledge and involvement of Plaintiff's own management *(Exhibits E-3 and E-4).*

13. On February 4, 2026, after pressure from Antonopoulos, IDPH reissued Plaintiff's license *(Ex. E-2).* This reissuance occurred on the **exact same day** that the Illinois Department of Insurance and the Illinois Attorney General rejected service on Liberty Mutual Personal Insurance Company in Plaintiff's RICO case *(Ex. F-11).* This synchronized action, combined with Antonopoulos' prior hostile communications with IDPH, supports an inference of coordinated government retaliation designed to undermine Plaintiff's professional credentials while protecting the RICO defendants.

14. Plaintiff's resignation on May 9, 2026 was the direct result of the intolerable retaliatory work environment created by the foregoing pattern of adverse actions. This constitutes constructive discharge.

15. The aforementioned adverse actions occurred despite Plaintiff's documented positive performance (e.g., Plaintiff wrote approximately 80% of the citations as of the February 11, 2026 meeting with Chris Antonopoulos and Renante Marante, *Exhibit H).*

## VI. DAMAGES

16. As a direct and proximate result of Defendant's retaliatory conduct and the intolerable retaliatory work environment it created, Plaintiff has suffered and will continue to suffer substantial damages, including:

    a. **Economic damages** consisting of lost wages, benefits, accrued PTO, and diminished future earning capacity resulting from his constructive discharge on May 9, 2026;

    b. **Severe emotional distress**, anxiety, humiliation, and mental anguish caused by the prolonged pattern of retaliation, including the Director's personally signed Final Written Warning for protected activity *(Exs. A)*, repeated disciplinary meetings, public *"kitten fraud"* accusations regarding his professional license, OnBase sabotage (April 15, May 6), economic coercion regarding the county vehicle, and the overall coordinated harassment that forced his resignation; and

    c. **Irreparable harm to professional reputation and career prospects** in the environmental engineering and asbestos inspection fields, including damage caused by the kitten-license mockery and public accusations orchestrated by Defendant.

17. The $75,000,000 demand reflects the egregious, willful, and malicious nature of the retaliation carried out by high-level county officials (including the Director herself), the coordinated pattern of adverse actions over several months, and the long-term devastation to Plaintiff's career, livelihood, and well-being.

## VII. CLAIMS FOR RELIEF

### Count 1 – 42 U.S.C. § 1983 – First Amendment Retaliation

18. Plaintiff engaged in protected petition-clause activity by filing the federal RICO lawsuit, attaching the Marquee Exhibits, and filing this §1983 action.

19. Defendant took multiple adverse employment actions against Plaintiff.

20. There is a direct causal connection between the Protected Activity and the adverse actions (temporal proximity + pattern of retaliation).

21. As a direct and proximate result, Plaintiff has suffered damages, including constructive discharge, lost wages, emotional distress, professional harm, and other injuries.

### Count 2 – Illinois Whistleblower Act (740 ILCS 174/15 & 20)

22. Plaintiff engaged in protected activity by disclosing information he reasonably believed showed violations of law, rule, or regulation by a public body (Cook County), including the matters documented in the RICO complaint, Marquee Exhibits, and subsequent protected federal filings.

23. Defendant took adverse employment actions against Plaintiff because of that protected activity.

24. As a direct and proximate result, Plaintiff has suffered damages, including lost wages, emotional distress, professional harm, and other injuries.

## Count 3 – Retaliatory / Constructive Discharge in Violation
## of Illinois Public Policy

25. Illinois common law prohibits an employer from discharging or constructively discharging an employee in retaliation for the employee's exercise of a protected right or for refusing to participate in illegal activity.

26. Plaintiff engaged in protected activity by filing the federal RICO and §1983 lawsuits, disclosing violations of law, and refusing to participate in Defendant's retaliatory scheme (including refusing to sign the liability-shifting incident report and refusing to accept manufactured discipline).

27. Defendant engaged in a pattern of adverse actions culminating in a Final Written Warning signed by the Director, explicit threat of termination, economic coercion, and an intolerable retaliatory environment that forced Plaintiff's resignation on May 9, 2026.

28. As a direct and proximate result, Plaintiff has suffered and will continue to suffer damages, including lost wages, emotional distress, professional harm, and other injuries.

## VIII. PRAYER FOR RELIEF

29. Plaintiff respectfully requests judgment against Defendant, in excess of **$75,000,000** (Seventy-Five Million Dollars) in compensatory damages, plus punitive damages where available, attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law, injunctive relief as appropriate, and any other relief the Court deems just and proper.

30. For in the end, law may guide, but conscience is all.

**Respectfully submitted,**

*Brian A Crofoot*

/s/ Brian A. Crofoot, Pro Se

**Address:** 4180 N. Marine Dr. #1501, Chicago, Illinois, 60613

**Email:** crofoot.bc@gmail.com

**Phone:** 440-258-0207

**Dated:** May 12, 2026

## IX. Exhibits List

The following exhibits are attached and incorporated by reference:

**Marquee Exhibits**: Photos of drenched electricals and key coordination documents, (Docket #14, Feb. 12, 2026, Crofoot v Liberty Mutual et al, 2026, Case No. 1:26-cv-00672)

**Exhibit A:** Plaintiff's May 5, 2026 email declining disciplinary meeting; Director Malec-McKenna's May 5, 2026 Written Reprimand

**Exhibit B:** Retaliation Coordination Diptych: Two-panel Diptych showing Timeline of Events and associated records, notes, communications between Plaintiff and management.

**Exhibit E:** License Manipulation Exhibits: (E-1): Kitten licenses, October 29, 2025 original with five kittens; (E-2) February 4, 2026 reissued license; (E-3) Oct. 22, 2025 emails between Renante Marante & IDPH's Eric Culbertson; (E-4) Chris's emails re: *"kitten fraud"* accusations to IDPH (Jan. 2026)

**Exhibit F:** Third-party adversity documentation (Docket #34, March 20, 2026, in Case No. 1:26-cv-00672)

**Exhibit G:** Additional January - May 2026 documentation — vehicle incident form, OnBase screenshots, Chris's & Plaintiff's emails, etc.

**Exhibit H:** February 11, 2026, notes from the meeting between Marante, Antonopoulos, and Plaintiff showing Plaintiff had 80% of citations and good performance.

**Exhibit I.** Emails between Plaintiff and SEIU's Irvina Anthony (March- April 2026)

## X. VERIFICATION

**A.** I, Brian Alan Crofoot, being first duly sworn on oath, state that I have read the foregoing Complaint and that the statements contained therein are true and correct to the best of my knowledge, information, and belief.

**B.** **Representations to the Court:** Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint:

   1. Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

   2. Is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

   3. The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

   4. The Complaint otherwise complies with the requirements of Rule 11.

_____, this ____12____ day of _____May_____, 2026.
BRIAN ALAN CROFOOT, Plaintiff