**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN A. CROFOOT, | ) | |
| | ) | No. 26-cv-05025 |
| Plaintiff, | ) | |
| | ) | Judge Martha M. Pacold |
| v. | ) | |
| | ) | Magistrate Judge Maria Valdez |
| COOK COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT COOK COUNTY'S MOTION TO DISMISS VERIFIED FIRST**
**AMENDED COMPLAINT AND TO STRIKE CLAIM FOR PUNITIVE DAMAGES**

Defendant Cook County ("County"), by its attorney, Eileen O'Neill Burke, Cook County State's Attorney, through her assistant, W. Clifton Holmes, hereby files the instant motion to dismiss Plaintiff's Verified First Amended Complaint and to strike Plaintiff's claim for punitive damages, pursuant to Federal Rules 12(b)(6) and 12(f). In support, Defendant states as follows:

**FACTUAL ALLEGATIONS**

Plaintiff alleges he worked for the Cook County Department of Environment and Sustainability ("DES") as an Environmental Engineer II from May 2025 until May 2026. Dkt. 6, ¶4. Plaintiff alleges he resigned on May 9, 2026. Dkt. 6, ¶4. Plaintiff alleges he resigned due to "intolerable retaliation." *Id.*

Plaintiff alleges that in October 2025, his then-manager at DES, Renante Marante, "issued Plaintiff[] [an] asbestos inspector professional license" "bearing a photograph of five kittens instead of a standard professional headshot" "in coordination with" the Illinois Department of Public Health (IDPH).[1] Dkt. 6, ¶11.

---

[1] Plaintiff cites an Exhibit E-1 related to this allegation; however, no Ex. E-1 is attached to the complaint.

Plaintiff states he filed a "federal RICO complaint" on January 19, 2026 (the "Prior Lawsuit"). Dkt. 6, ¶18. Plaintiff alleges that the defendants to the Prior Lawsuit "coordinat[ed]" with each other and engaged in "racketeering activity." Dkt. 6, ¶7. Plaintiff alleges that attachments to the Prior Lawsuit complaint consisted of "photograph[s] of a drenched 200-amp electrical panel directly above a gas main in a multi-residential building." *Id.* Plaintiff further alleges he attached "photograph[s] evidence of" "coordination letters between the defendants, and related racketeering activity" in the Prior Lawsuit. *Id.* Plaintiff does not identify specific conduct, or forms of conduct, which comprised alleged racketeering activity in the Prior Lawsuit.

Plaintiff alleges he filed an amended complaint in his Prior Lawsuit on March 12, 2026. Dkt. 6, ¶8. Plaintiff alleges the amended complaint "expressly named [DES] Director [Suzanne] Malec-McKenna in connection with adverse actions." *Id.* Plaintiff does not describe the alleged adverse actions in "connection" with which Director Malec-McKenna was "named." Plaintiff alleges his filing of the Prior Lawsuit comprised "protected petition-clause activity." Dkt. 6, ¶18.

Plaintiff alleges that Christopher Antonopoulos, an employee or official of DES, "publicly accused Plaintiff of 'kitten fraud'" in conjunction with his IDPH asbestos inspector's license in January 2026. Dkt. 6, ¶12. Plaintiff alleges that IDPH re-issued an asbestos inspector's license to Plaintiff on February 4, 2026. *Id.*, ¶13. Plaintiff alleges this occurred "after pressure from" Mr. Antonopoulos. *Id.*, ¶13. Plaintiff alleges that IDPH re-issued Plaintiff's asbestos license "on the exact same day" that the Illinois Department of Insurance and the Illinois Attorney General "rejected service on Liberty Mutual Personal Insurance Company in Plaintiff's RICO case." *Id.* Plaintiff alleges these events comprised "synchronized action"

"support[ing] an inference of coordinated government retaliation" against Plaintiff. *Id.* It is unclear what, if any, claim this is intended to support.

Plaintiff alleges he sent an email correspondence to an unspecified recipient at DES "declining [a] disciplinary meeting" on May 5, 2026. Dkt. 6, ¶10(d). Plaintiff does not otherwise specifically allege the subject matter of the disciplinary meeting he refused to attend. Plaintiff alleges that Director Malec-McKenna issued a "personally signed" written reprimand to Plaintiff for insubordination on May 7, 2026 for refusing to attend the May 5, 2026 disciplinary meeting. *Id.* Plaintiff characterizes his email refusing to attend the scheduled May 5, 2026 disciplinary meeting as a "protected" communication. *Id.*

Plaintiff alleges a vandal slashed a tire on his County-issued vehicle on or around May 5, 2026. Dkt. 6, ¶10(a). Plaintiff alleges the County issued him a form relating to the alleged vandalism containing "pre-load[ed]" "checkboxes." *Id.* He alleges this form gave Plaintiff's "supervisor[,] and [DES'] Director[,] full discretion to declare [Plaintiff] responsible" for damage to the tire. *Id.*

Plaintiff alleges that Mr. Antonopoulos responded to Plaintiff about the identified software issue in an email on May 8, 2026, stating that an  information technology consulting firm (Clarity Partners) would "independently replicate" the software issue of which Plaintiff advised. Dkt. 6, ¶10(e). Plaintiff alleges Mr. Antonopoulos canceled a previously-scheduled meeting regarding the software issue. *Id.* Plaintiff alleges Mr. Antonopoulos also stated in an email that DES had arranged for Plaintiff's County vehicle to be towed on May 11, 2026. *Id.* Plaintiff characterizes these emails from Mr. Antonopoulos as "damage control emails." *Id.*

Plaintiff alleges that an OnBase software interface that he used at DES became "disabled" on May 6, 2026. Dkt. 6, ¶10(b).

Plaintiff alleges Mr. Antonopoulos made a "false claim[]" about whether said software issue had been resolved. Dkt. 6, ¶10(b). It is unclear what, if any, claim this is intended to support.

Plaintiff's cites seven exhibits, lettered A, B, E, F, G, H, and I. Dkt. 6, ¶¶10(b), 10(d), 11, 12, 15, p. 9. The exhibits are not attached to the complaint.

## BACKGROUND

The Cook County Department of Environment and Sustainability, the County agency at which Plaintiff worked, is the agency with responsibility for enforcing the provisions of the County Environmental Control Ordinance ("Environmental Ordinance" or "the Ordinance"). *See* Cook Cty. Ordinance §§ 30-1, 30-2(f), *available at* https://library.municode.com/il/cook_county/codes/code_of_ordinances. The Cook County Board of Commissioners enacted the Environmental Ordinance to "lessen or prevent the discharge of environmental contaminants or pollutants" within Cook County. *See* Cook Cty. Ordinance § 30-6(a). Those subject areas encompassed within the scope of the Ordinance's regulations include: "Air"; "Noise"; "Asbestos and Related Substances"; and "Solid Waste and Recycling." *See* Cty. Ordinance § 30-1, *et seq.* (Art. III- Art. VI).

## ARGUMENT

Federal Rule 12(b)(6) requires dismissal of complaints which fail to state an actionable claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). In assessing a Rule 12(b)(6) motion, the Court must accept a plaintiff's well-pleaded allegations as true, and draw all reasonable inferences in the light most favorable to the plaintiff. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A court is not, however, required to accept conclusory factual allegations, nor legal conclusions. *Khan v. OneWest*

*Bank, F.S.B.*, No. 16cv8074, 2017 U.S. Dist. LEXIS 55691, at *7 (N.D. Ill. 2017) (citing *Iqbal*, 556 U.S. at 680-82). To withstand a R. 12(b)(6) motion to dismiss, the complaint "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). Plaintiff fails to allege facts in the Amended Complaint which state any actionable claim against Defendant. This Court should accordingly dismiss the complaint in its entirety.

I.     **Count I, Pleading First Amendment Retaliation Under Section 1983, Fails to State a Claim.**

Plaintiff's Count I, which alleges First Amendment retaliation under 42 U.S.C. § 1983 ("Section 1983"), fails to state a claim. To plead a cognizable claim of First Amendment retaliation, a public employee must allege that: 1) he engaged in constitutionally protected speech; 2) his employer retaliated against him because of that speech; and 3) the alleged retaliation caused him to suffer a materially adverse employment action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). To plead that his speech was constitutionally protected, a plaintiff must allege: 1) that he spoke as a private citizen rather than in his capacity as a public employee; 2) that he spoke on a matter of public concern; and 3) that his interest in expressing the speech is not outweighed by the state's interests as an employer in promoting effective and efficient public service. *Haynam v. City of Chicago*, No. 25cv5339, 2026 U.S. Dist. LEXIS 16869, *5 (N.D. Ill. Jan. 29, 2026) (citing *Lett v. City of Chi.*, 946 F.3d 398, 400 (7th Cir. 2020)). If an employee does not "sp[eak] as a [private] citizen on a matter of public concern[,]" he or she "has no First Amendment cause of action based on his or her employer's reaction to the speech[.]" *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "The determination of whether speech is constitutionally protected is a question of law." *Kubiak*

*v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016).[2] Plaintiff has failed to plausibly allege either that he spoke on a subject of public concern, or that he did so as a private citizen. The Court thus need not address the third element for determining whether the alleged speech is constitutionally protected (employer interest in promoting public service) at this juncture.

Preliminarily, Plaintiff's attempt to incorporate by reference, and thereby rely on, allegations and exhibits from the Prior Lawsuit— without attaching the complaint (or those exhibits) from that suit— fails. *H.G. Gallimore, Inc. v. Abdula*, 652 F. Supp. 437, 451 n.12 (N.D. Ill. 1987) (court should "refus[e] to allow incorporation by reference of pleadings in other cases") (citing Fed. R. Civ. P. 10(c) and *Texas Water Supply Corp. v. Reconstr. Finance Corp.*, 204 F.2d 190, 196-97 (5th Cir. 1953)); Fed. R. Civ. P. 10(c) ("[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion"). Setting that aside, in part because Plaintiff has not attached the complaint from the prior suit, nor recited verbatim the allegations from that suit, Plaintiff fails to sufficiently allege that he uttered speech addressing matters of public concern in the prior suit, nor that he uttered that speech as a private citizen.

***Private Citizen***. Plaintiff fails to sufficiently allege that his speech in the Prior Lawsuit was made in his capacity as a private citizen. When a public employee engages in speech in his or her official capacity, that speech is not protected by the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006) (disciplinary action on the basis of such speech does not offend First Amendment because "[r]estricting employee speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a

---

[2] Plaintiff does not allege that Defendant violated Plaintiff's First Amendment rights pursuant to any policy or practice. Plaintiff's Count I therefore does not attempt to plead Section 1983 liability under *Monell v. Dep't. of Social Serv. of City of N.Y.*, 438 U.S. 658 (1978). *Id.*, 438 U.S. at 690-91 (plaintiff seeking to plead Section 1983 claim against local government entity must adequately allege that "policy or custom" of entity gave rise to the claimed violation of rights).

private citizen."). Without the original content of the Prior Lawsuit pleadings before the Court, it is impossible for the Court to adequately assess whether Plaintiff sued the defendants to the prior suit by marshaling information "ow[ing] its existence to" Plaintiff's "professional responsibilities" (*Garcetti*), or if instead, Plaintiff proceeded in that litigation strictly as a private citizen. *See Fehlman v. Mankowski*, 74 F.4th 872, 875 (7th Cir. 2023) ("[e]mployees' statements about 'misconduct affecting an area within [their area of] responsibility [as a public employee]' are considered official-capacity speech"); *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013) (where reported misconduct could impact employee's area of responsibility, speech is pursuant to official duties); *Green v. Board of County Comm'rs.*, 472 F.3d 794, 800-01 (10th Cir. 2007) (where activities of which plaintiff spoke 'stemmed from' and were 'the type of activities she was paid to do,'" speech did not comprise private-citizen speech, and instead comprised official-capacity speech). Thus Plaintiff fails to advance allegations plausibly establishing that his speech in the Prior Lawsuit comprised private-citizen speech. Likewise his alleged speech concerning in-office issues, such as that relating to an alleged software defect or problem, does not comprise private-citizen speech. *Garcetti*, 547 U.S. at 421 (complaints regarding retaliation not protected); *Kubiak*, 810 F.3d at 481-82 (report of verbal assault by co-worker not protected).

***Speech of Public Concern***. Plaintiff has not alleged sufficient facts plausibly supporting a claim that he spoke on a matter of public concern in the prior suit. Plaintiff's allegations concerning the content and character of the Prior Lawsuit are conclusory. His characterizations of the Prior Lawsuit and its pleadings do not supersede the actual content of those pleadings themselves.

Plaintiff impliedly alleges that Liberty Mutual Personal Insurance Company ("Liberty") is one defendant to the Prior Lawsuit, Dkt. 6, ¶13 (alleging that the Illinois Attorney

General refused to accept service on Liberty); but, Plaintiff does not identify all the defendants to that suit. The docket sheet to the Prior Lawsuit indicates that each of the defendants in that case is a private entity. **Ex. A.**[3] Plaintiff does not explain, or otherwise adequately allege, how any of the alleged activities of such private entity-defendants implicate public interests. As RICO matters typically involve a "financial purpose,"[4] and RICO permits plaintiffs to recover damages upon a successful suit, 18 U.S.C. § 1962(c), the mere invocation of RICO itself is insufficient to establish that the subject matter of Plaintiff's prior suit involves public interests. It is unclear from Plaintiff's allegations how the conditions Plaintiff claims he documented at a "multi-residential building" implicate matters of broader public concern. Plaintiff does not allege the location (by address, city, or even state) of the multi-residential building. It would require impermissible speculation for this Court to impute a public interest on the basis of such threadbare allegations. Though Plaintiff does not expressly allege whether he seeks damages in the Prior Lawsuit, assuming that he does, Plaintiff would ask that the Court accord public-concern status to an activity wherein he alleges he notified the County of a suit in which he sought damages from private parties. The Court should decline such invitation to speculate on how and whether such activity implicates public concerns. The Court should likewise decline to attach public-concern status to Plaintiff's internal complaint regarding an alleged software problem, and similar in-office issues. *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("[m]erely discourteous working environment" does not meet the standard for a First Amendment claim).

---

[3] This Court may take judicial notice of the docket sheet from the Prior Lawsuit. *Palay v. U.S.*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) ("[I]n resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record.").

[4] *Accord Kotsias v. Daley*, No. 91-2655, 1992 U.S. App. LEXIS 17207, *8 (7th Cir. July 14, 1992) (a RICO claim need "show[] a financial purpose behind the alleged activities" since "non-economic crimes committed in furtherance of non-economic motives are not within the ambit of RICO") (quoting *Nat'l Organization for Women, Inc. v. Scheidler*, No. 91-2468, slip op. at 32 (7th Cir. June 29, 1992)).

Plaintiff claims he filed an "amended RICO complaint" in the Prior Lawsuit "expressly nam[ing] [DES] Director Malec-McKenna in connection with adverse actions." Dkt. 6, ¶8. This allegation is likewise insufficient to lend a public character to the Prior Lawsuit. Director Malec-McKenna is not a named defendant to the case. Ex. A. Private conduct, such as the conduct of the private-entity defendants to the Prior Lawsuit, is not actionable under Section 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (Section 1983 "excludes from its reach merely private conduct, no matter how [] wrongful"); *Darr v. Town of Telluride*, 495 F.3d 1243, 1256 (10th Cir. 2007) (private actors' conduct does not give rise to actionable Section 1983 claim when the conduct is not "fairly attributable" to the state, "no matter how atrocious" it is).

II.     **Count II Fails to State a Claim Upon Which Relief Can Be Granted.**

Plaintiff's Count II, alleging Defendant violated the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1, *et seq.*, also fails to state a claim.

A.     *740 ILCS 174/15*

To state an actionable cause of action under IWA Section 15(b), an employee must allege an adverse employment action by his or her employer, in retaliation for the employee's disclosure to a government or law enforcement agency of a suspected violation of an Illinois or federal law, rule, or regulation. *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492 ¶15 (Ill. App. Ct. 4th Dist. 2017) (citing *Taylor v. Bd. of Educ.*, 2014 IL App (1st) (Ill. App. Ct. 1st Dist. 2014)). Plaintiff alleges that DES retaliated against Plaintiff because he "disclos[ed]" to DES "violations of law, rule, or regulation by" Cook County in "matters documented in [Plaintiff's] RICO complaint" and attachments thereto. [Dkt. 6], ¶22. Plaintiff does not, however, identify a specific law he would contend Cook County violated, either related to alleged RICO offenses in the Prior Lawsuit, or otherwise. Plaintiff further does not specify what County agency or instrumentality— whether

9

DES, or a different County entity— allegedly violated a law. Count II therefore fails to state a claim. *Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, at ¶¶ 42, 44 (Ill. 2019) (analogously, affirming dismissal of claim under IWA Section 20, 740 ILCS 174/20, where plaintiff "fail[ed] to cite any state or federal law, rule, or regulation that defendant violated[,]" since such "allegation cannot serve as [] predicate for [a] claim under [Section 20] of the Whistleblower Act[,] and to adequately plead an IWA Section 20 violation, plaintiff must "sufficiently allege [] that he or she refused to participate in [a given] activity [and] that the activity violated a statute, rule, or regulation").[5] As noted above, the only named defendants to the Prior Lawsuit are private entities— Cook County is not a defendant to that case.

Additionally, Plaintiff's vague allegations concerning conditions at a multi-residential building do not implicate that type of reporting entitled to whistle-blower protection under the IWA. *Sweeney*, 2017 IL (4th) 160492 ¶19 (purpose of IWA is to protect statutorily-defined employees who report violations of state or federal laws, or rules or regulations, because the reported wrongful conduct or unsafe condition affect[] the health, safety[], or welfare of Illinois residents as a whole) (internal quotation marks, citation, and emphasis omitted).

Plaintiff's Count II fails to state a claim for further reasons. Plaintiff's allegations supporting his claim that he was constructively discharged are inadequate under R. 12(b)(6) to establish such a discharge, and he therefore fails to plead a cognizable adverse action by Defendant. There are two forms of recognized constructive discharge: 1) where predicated on a claim that an employee was forced to resign because of intolerable work conditions; and 2) where predicated on

---

[5] *Cf. Magnuson v. Exelon Generation Co., LLC*, No. 21cv04142, 2024 U.S. Dist. LEXIS 175631, *103 (N.D. Ill. Sept. 27, 2024) (awarding summary judgment to defendant on IWA Section 20 claim because plaintiff failed to "identif[y] that [a] requested remediation plan would have violated any law, statute, or regulation"; further stating, "the Court declines to" "invent an argument on [plaintiff's] behalf" by "survey[ing] "the Code of Federal Regulations").

10

an employee's resignation after his "employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). Plaintiff pleads the former.

A plaintiff claiming constructive discharge must allege facts from which the fact-finder can "infer[] that a reasonable person would have felt compelled to resign because the working conditions were so intolerable." *Lara v. Rock Valley Coll. Police Dep't.*, No. 22cv50014, 2023 U.S. Dist. LEXIS 36689, *11 n.5 (N.D. Ill. Mar. 6, 2023) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)). A plaintiff accordingly must allege a work environment "even more egregious" than a "hostile" work environment to state a claim of constructive discharge. *Lopez v. Vill. Disc. Outlet Inc.*, No. 23cv16201, 2024 U.S. Dist. LEXIS 140214, *8 (N.D. Ill. Aug. 6, 2024) (quoting *Scaife v. U.S. Dep't. of Veterans Affs.*, 49 F.4th 1109, 1119 (7th Cir. 2022)).

Plaintiff fails to plausibly plead that the written reprimand which Director Malec-McKenna issued to him on May 7, 2026 comprised an adverse action precipitated by any protected activity, because he acknowledges that Director Malec-McKenna issued him that reprimand because he refused to attend a meeting.

Plaintiff also does not allege sufficient facts plausibly supporting a claim his work conditions were intolerable. Plaintiff's allegation that an unknown person slashed the tire of his County-issued (and County-owned) vehicle in an employee parking lot, apparently when the vehicle was unoccupied, fails to allege intolerable work conditions. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) ("[o]ne threat and raised voices would not rise to the level of a hostile work environment, and so it also cannot be the basis for [a] constructive discharge claim.") (citing *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000)). As to the remaining claims, including a) the software issues Plaintiff alleges, and b) his potential

11

notification to DES some time in early 2026 of the fact of the Prior Lawsuit— something Plaintiff nowhere expressly alleges— these claims fail to establish a nexus between those facts, and his subsequent, eventual resignation. *Williams v. Chi. Bd. of Educ.*, 24-CV-11729, 2026 U.S. Dist. LEXIS 68213, *14 (N.D. Ill. Mar. 30, 2026) ("Because Williams does not allege concrete facts that suggest causation between his reporting and his constructive discharge, he fails to state a whistleblower claim.").

Though Plaintiff does not allege he resigned because DES acted in a manner which communicated to Plaintiff that he would be terminated, even if he had so alleged (or would seek to now cast the amended complaint to allege such), the complaint does not plausibly advance such a claim. Plaintiff alleges that DES' Director issued Plaintiff a written reprimand for failing to attend a disciplinary meeting, but he does not allege any express statement, or action, suggesting imminent termination. Likewise, the prospect that Plaintiff could be terminated because he stated on May 5, 2026 that he refused to attend a disciplinary meeting, Dkt. 6, ¶10(d), is insufficient to give rise to a claim of retaliatory discharge. A working condition does not become intolerable or unbearable merely because a "prospect of discharge lurks in the background." *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 33[] (7th Cir. 2004); *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 578 (7th Cir. 2005) (explaining that doctrine of constructive discharge is "limited to egregious cases" and "occurs when an employee resigns because working conditions are so intolerable that a reasonable employee would feel compelled to quit").

B. *740 ILCS 174/20*

Plaintiff also cites 740 ILCS 174/20 in the caption to Plaintiff's Count II. Dkt. 6, p. 6. Plaintiff has nowhere cognizably alleged in support of a claim under IWA Section 20 that he refused to participate in a given activity— which activity violated a *specifically*-identified statute,

12

rule, or regulation. 740 ILCS 174/20 (employer "may not take retaliatory action against [] employee for refusing to participate in [] activity that [] employee has a good faith belief that such participation would result in a violation of a State or federal law, rule, or regulation, including, but not limited to" violations of the Freedom of Information Act). Though he alleges in support of his retaliatory discharge claim (Count III) that he "refus[ed] to participate in Defendant's retaliatory scheme (including refusing to sign the liability-shifting incident report and refusing to accept manufactured discipline)[,]" Dkt. 6, ¶26, a plaintiff's allegation that he refused to participate in an employer's retaliation against him in violation of 740 ILCS 174/15 is circular, and does not state a viable claim under 740 ILCS 174/20. *Roberts*, 2019 IL 123594, at ¶44 (affirming dismissal of IWA Section 20 claim where plaintiff "fail[ed] to cite any state or federal law, rule, or regulation that defendant violated").

III.    **Count III Fails to State a Claim Upon Which Relief Can Be Granted.**

Plaintiff's Count III, alleging common law retaliatory discharge, also fails to state a claim. Under Illinois law, an "employer may fire an employee-at-will for any reason or no reason at all," but there is a limited exception prohibiting retaliatory discharge. *Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 375-76 (Ill. 1998). To successfully plead a common law retaliatory discharge claim, a plaintiff must plausibly allege that "(1) he was discharged in retaliation for his activities; and (2) the discharge is in contravention of a clearly mandated public policy." *Id.*

Plaintiff's retaliatory discharge claim suffers from a similar deficiency to his IWA claim: neither claim identifies any specific law, statute or regulation he would assert that the County violated. Plaintiff does not clearly allege what purported wrongdoing the County (or a County instrumentality) engaged in, in relation to his Prior Lawsuit (the RICO action). The County Department of Environment and Sustainability does not have jurisdiction to enforce federal

13

racketeering crimes. There is no clearly mandated public policy against disciplining, or otherwise subjecting an employee to scrutiny, who files a civil lawsuit alleging RICO violations by one or more insurance companies.

***On-Base Software Allegations***. Plaintiff's allegations concerning an alleged problem in the functioning of software used by DES personnel, Dkt. 6, ¶¶10(b), 16(b), fail to state a claim under Count III. Common law retaliatory discharge does not sweep an employee's complaints to his or her employer within the scope of the doctrine's protections. *Bustamante v. Tin, Inc.*, No. 07cv970, 2008 U.S. Dist. LEXIS 9782, *4 (N.D. Ill. Feb. 11, 2008). Plaintiff alleges in any event that immediately prior to his resignation, the County had scheduled a meeting with an outside vendor to attempt to independently duplicate the alleged software problem. Dkt. 6, ¶10(e).

***Plaintiff's Refusal to Attend a Disciplinary Meeting***. Plaintiff alleges that DES scheduled a disciplinary meeting that Plaintiff was to attend in early May 2026, but Plaintiff refused to attend. Dkt. 6, ¶10(d). Plaintiff alleges that when he thus refused to attend such meeting, this comprised "protected" activity under the IWA— but this contention lacks merit. The Whistleblower Act was created "to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct *by their employers*[,]" *Harris v. City of Chicago*, 479 F. Supp. 3d 743, 750 (N.D. Ill. 2020) (emphasis added), and here, Plaintiff has merely alleged his own refusal to participate in a scheduled meeting.

***Remaining Allegations***. Plaintiff alleges that Defendant "blocked" "repair" of Plaintiff's County-issued vehicle "until Plaintiff signed a 5-page Vehicle Incident Form[.]" Dkt. 6, ¶10(a).[6] Plaintiff alleges this comprised "[e]conomic coercion[,]" because "Plaintiff owns no personal vehicle[.]" Dkt. 6, ¶10(a). This and like allegations fail to state a claim for retaliatory discharge

---

[6] Plaintiff alleges in cursory fashion that the Vehicle Incident Form was contrary to the "Cook County Driver Agreement." Dkt. 6, ¶10(a). Plaintiff neither alleges nor summarizes the terms of the driver agreement.

where predicated on Plaintiff's apparent dissatisfaction or disappointment with said vehicle form, or policy, or such workplace conditions. *Taylor*, 2024 IL App (1st) 231373-U, at *P27 (plaintiff does not state viable retaliatory discharge claim where predicated on employer's act of discretion).

## IV. Plaintiff's Request for Punitive Damages Should Be Stricken.

If the Court does not dismiss the Amended Complaint with prejudice, Defendant requests that the Court strike Plaintiff's claim for punitive damages from his prayer for relief (Dkt. 6, p. 8). Fed. R. Civ. P. 12(f) (court may "strike" from a pleading "any…redundant, immaterial, [or] impertinent" matter). Punitive damages are not available under the causes of action Plaintiff has pled. *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983"); *Lagrone v. Hall*, No. 91cv7133, 1992 U.S. Dist. LEXIS 17945, *19-*20 (N.D. Ill. 1992) ("[p]unitive damages are not recoverable against a municipality in a Section 1983 action"); *Williams*, 2026 U.S. Dist. LEXIS 68213 at *23 Ill. Mar. 30, 2026) (stating, "[defendant] is correct" that punitive damages "are not available" under the Illinois Whistleblower Act); *Smith v. Waukegan Park Dist.*, 231 Ill. 2d 111, 117 (Ill. 2008) ("punitive damages" are "unavailab[le]" in retaliatory discharge suit "against [] public employer") (citation omitted). Accordingly, Plaintiff's request for punitive damages should be stricken with prejudice.

## CONCLUSION

WHEREFORE, Defendant respectfully requests this Court grant Defendant's Motion and dismiss Plaintiff's Complaint with prejudice. To the extent the Court does not dismiss Plaintiff's Complaint in its entirety with prejudice, Defendant requests that this Court strike Plaintiff's request for award of punitive damages with prejudice.

Dated: June 29, 2026

Respectfully submitted,

EILEEN O'NEILL BURKE
Cook County State's Attorney

By:   /s/ *W. Clifton Holmes*
W. Clifton Holmes
Assistant State's Attorney
Labor and Employment Section
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
Telephone: (312) 603-7819
clifton.holmes@cookcountysao.org