

FILED
7/16/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MPV

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN A. CROFOOT, | ) | **Case No.** 1:26-cv-05025 |
| *Plaintiff,* | ) | |
| | ) | **Hon. Judge:** Martha M. Pacold |
| v. | ) | **Magistrate Judge:** Maria Valdez |
| | ) | |
| Cook County, Illinois, | ) | |
| *Defendant.* | ) | |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**TO THE HONORABLE JUDGE AND DEFENDANT:**

## I. INTRODUCTION

Plaintiff Brian A. Crofoot, pro se, respectfully submits this Memorandum in Opposition to Defendant Cook County's Motion to Dismiss the Verified First Amended Complaint *(Dkt 19)*. Plaintiff's Amended Complaint states plausible claims for relief under 42 U.S.C. § 1983, the Illinois Whistleblower Act, and Illinois common law for retaliatory discharge. Defendant's motion should be denied in its entirety. In the alternative, Plaintiff requests leave to amend if the Court identifies any deficiencies.

Plaintiff has alleged a clear and well-documented pattern of retaliation by Defendant in direct response to his protected petition-clause activity — the filing of a federal civil RICO action on January 19, 2026, and an amended complaint on March 13, 2026 (*Crofoot v. Liberty Mutual*

*Personal Insurance Company, 1:26-cv-00672, (N.D. Ill.).* The Retaliation Coordination Diptych **(Exhibit B)** and supporting exhibits *(Dkt 7)* detail a series of adverse actions that escalated after Plaintiff engaged in protected activity and culminated in his constructive discharge on May 9, 2026. These allegations are more than sufficient to survive dismissal under Rule 12(b)(6).

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Fed. R. Civ. P. 8(a); Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.

Further, *Erickson v. Pardus,* 551 U.S. 89 (2007), reaffirms pro se complaints are entitled to liberal construction. Leave to amend should be freely given when justice so requires, particularly for pro se litigants. *See Fed. R. Civ. P. 15(a); Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. ARGUMENTS

### A. Plaintiff's Section 1983 Claim (Count I) States a Plausible Claim for First Amendment Retaliation

Plaintiff's Section 1983 claim is distinct but related to his earlier RICO claim against other parties. Although Plaintiff engaged in protected activity by filing the RICO lawsuit, this case is not about whether that lawsuit was correct or successful. Instead, Plaintiff alleges that

Defendant retaliated against him at work *because* he filed it. Defendant is trying to blur the two cases together. The real question in this case is whether Cook County took adverse actions against Plaintiff in retaliation for exercising his First Amendment rights — not whether his original RICO claims were valid.

### 1. Plaintiff Spoke as a Private Citizen

Defendant's reliance on *Garcetti v. Ceballos*, 547 U.S. 410 (2006), is misplaced. The City of Chicago has enforcement authority over the property where Plaintiff resided. Therefore, Plaintiff's filing of the Prior Lawsuit was not undertaken pursuant to his official duties as an Environmental Engineer II. Rather, Plaintiff proceeded in his capacity as a private citizen seeking redress for alleged misconduct that implicated serious public safety concerns, **including the failure to repair a drenched electrical panel located directly above a gas main in a multi-residential building** *(Marquee Exhibits #1 to 5, Dkt 14, photographs on pgs 2-6, Case 1:26-cv-00672).*

### 2. Plaintiff Spoke on a Matter of Public Concern

Plaintiff's Prior Lawsuit alleged serious housing and safety code violations that posed clear risks to the health and safety of residents. Such allegations plainly involve matters of public concern. *See Connick v. Myers*, 461 U.S. 138, 146 (1983).

Defendant's reliance on the docket sheet from Plaintiff's Prior Lawsuit is misplaced. The fact that the defendants in that action were private entities does not diminish the public concern implicated by Plaintiff's allegations of serious safety hazards affecting residents, nor does it defeat Plaintiff's claim that Defendant retaliated against him for engaging in protected activity.

### 3. Plaintiff Has Plausibly Alleged Retaliation and Causation

Plaintiff has alleged a detailed pattern of adverse actions that began shortly after he engaged in protected activity. Most significantly, Defendant's Suzanne Malec-McKenna issued a **personally signed Final Written Warning** on **May 7, 2026** — just **two days** after Plaintiff sent an email on **May 5, 2026** declining to attend a scheduled disciplinary meeting *(Exs. A-1, A-2, Dkt 7, pgs 5-6)*. In that email, Plaintiff expressly stated that he believed the meeting was retaliatory and pretextual in light of his protected federal activity.

This close temporal proximity between Plaintiff's protected activity (key docket events) and the issuance of the Final Written Warning supports a strong inference of retaliatory motive. *See Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Moreover, Plaintiff's May 5 email and rebuttal directly undermines Defendant's claim that the reprimand was issued for legitimate, non-retaliatory reasons *(Exs. A-3, A-4, Dkt 7, pgs 7-9)*.

Plaintiff's strong performance record further supports this inference. As of February 11, 2026, Plaintiff had issued **approximately 80% of the citations** assigned within his division or team *(Ex. H-1, Dkt 7, pg 10)*. Despite this documented high level of productivity, Defendant subjected him to escalating adverse actions — including OnBase sabotage that impaired his ability to perform his duties *(Exs. G, Dkt 7, pgs 13-16 & 28)*, economic coercion related to his County-issued vehicle, asbestos inspector license interference *(Exs. E, Dkt 7, pgs 17-19)*, and a Final Written Warning issued immediately after he engaged in protected activity. These facts support a plausible inference that Defendant's actions were motivated by retaliation rather than legitimate performance concerns.

**4. The May 5 Email and Resulting Reprimand Demonstrate Pretext**

Defendant attempts to characterize Plaintiff's refusal to attend the May 5 meeting as simple *"insubordination."* This characterization is belied by Plaintiff's own email in which he tied his refusal directly to his protected activity *(Ex. A-2, Dkt 7, pg 6)*. Defendant's decision to issue a personally signed Final Written Warning just two days later — despite Plaintiff's strong performance record — supports the inference that the discipline was motivated by retaliation, not legitimate workplace concerns.

Additionally, several of the adverse actions appear designed to undermine Plaintiff's professional credibility and standing. These include public accusations of *"kitten fraud"* regarding his asbestos inspector license (despite management's involvement in creating the license, *Ex. F-5, Dkt 34, pg 8, Case 1:26-cv-00672*), the February 4, 2026 license interference (occurring the same day state agencies attempted to obstruct service in the Prior Lawsuit, *Ex. F-11, Dkt 7, pg 27)*, and the sabotage of his OnBase access, which was followed by Christopher Antonopoulos' false claims that the technical issues had been resolved.

When viewed alongside the broader pattern of adverse actions alleged in the Amended Complaint and detailed in the Retaliation Coordination Diptych *(Exhibit B)* and Third Party Interference *Exhibit F (Dkt 34, Case 1:26-cv-00672)*, these facts plausibly establish that Defendant retaliated against Plaintiff because of his protected petition-clause activity.

**B. Plaintiff's Illinois Whistleblower Act Claim (Count II) States a Plausible Claim**

Defendant argues that Plaintiff's IWA claim fails because he did not identify a specific law or regulation that was violated and because his constructive discharge allegations are insufficient. These arguments are unpersuasive at the pleading stage.

Plaintiff has alleged that Defendant retaliated against him for disclosing information he reasonably believed showed violations of law — including potential violations related to the maintenance and integrity of government records and the improper use of official authority for retaliatory purposes — in connection with matters documented in his federal RICO complaint and the pattern of adverse actions he experienced. Plaintiff further alleges a pattern of adverse actions — including OnBase sabotage that impaired the integrity and accessibility of government systems, economic coercion, professional license manipulation, and a Final Written Warning issued just two days after he engaged in protected activity — that ultimately forced him to resign on May 9, 2026. These allegations are sufficient to state a plausible claim under the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*

While the IWA ultimately requires proof that the reported activity violated a specific law, rule, or regulation, a plaintiff is not required to prove his entire case in the complaint. Discovery will permit Plaintiff to further develop the specific legal violations implicated by Defendant's conduct. At this stage, Plaintiff's allegations are adequate.

Plaintiff has also plausibly alleged constructive discharge. He has detailed a pattern of escalating adverse actions that made his working conditions intolerable, including being subjected to the professional license interference and OnBase sabotage that impaired his ability to perform his job, and a Final Written Warning issued immediately after he engaged in

protected activity culminating in **explicit threats of termination** [Amended Complaint ¶ 10(d)]**.** Notably, Plaintiff's direct supervisor, Christopher Antonopoulos, stated on May 7 that *"termination is next."* The Director's **Final Written Warning** explicitly threatened termination for *any* future violation. These facts support a reasonable inference that a reasonable person in Plaintiff's position would have felt compelled to resign.

**C. Plaintiff's Common Law Retaliatory Discharge Claim (Count III) States a Plausible Claim**

Defendant argues that Plaintiff's retaliatory discharge claim fails for lack of a clearly mandated public policy and insufficient constructive discharge allegations. This argument should be rejected.

Plaintiff has alleged that he was constructively discharged in retaliation for engaging in protected activity and for refusing to participate in what he reasonably believed was retaliatory discipline *(Ex. A-4, Dkt 7, pg 9)*. The close temporal proximity between his protected activity, and the issuance of the **Final Written Warning**, combined with the broader pattern of adverse actions, supports a plausible inference of retaliatory motive.

Plaintiff's claim implicates clearly mandated public policies under Illinois law, including the right of employees to be free from retaliation for reporting suspected violations of law, for engaging in protected petition activity, and for filing the *Marquee Exhibits*. These allegations state a plausible claim for retaliatory discharge.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in its entirety. Plaintiff's First Amended Complaint as a whole states plausible claims for relief. In the alternative, Plaintiff requests leave to file a Second Amended Complaint to cure any deficiencies the Court may identify.

*For in the end, law may guide, but conscience is all.*

Respectfully submitted,



/s/ Brian A. Crofoot, Pro Se

4180 N. Marine Dr., #1501

Chicago, IL 60613

**Email:** crofoot.bc@gmail.com

**Phone:** 440-258-0207

**Dated:** July 16, 2026

## V. CERTIFICATE OF SERVICE

I, Brian Alan Crofoot, hereby certify that on July 16, 2026, a true and correct copy of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

_____

/s/ Brian Alan Crofoot, Pro se