**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN A. CROFOOT, | ) | |
| | ) | No. 26-cv-05025 |
| Plaintiff, | ) | |
| | ) | Judge Martha M. Pacold |
| v. | ) | |
| | ) | Magistrate Judge Maria Valdez |
| COOK COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT COOK COUNTY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND TO STRIKE CLAIM FOR PUNITIVE DAMAGES**

Defendant Cook County ("County"), by its attorney, Eileen O'Neill Burke, Cook County State's Attorney, through her assistant, W. Clifton Holmes, hereby files its motion to dismiss Plaintiff's Second Amended Complaint, and to strike Plaintiff's claim for punitive damages. In support, Defendant states as follows:

**PROCEDURAL HISTORY**

Plaintiff filed his complaint on April 30, 2026 and an amended complaint on May 12, 2026. Defendant moved to dismiss the amended complaint on June 29, 2026. [Dkt. 19].

On August 10, 2026, Plaintiff filed a motion for a preliminary injunction, seeking an order requiring Defendant to "immediately release Plaintiff's withheld Cook County pension." [Dkt. 29] at 1. Plaintiff withdrew that motion on August 12, 2026. [Dkt. 30].

Plaintiff filed a Notice of Voluntary Dismissal on August 19, 2026 stating Plaintiff intended to seek voluntarily dismissal of his Count III. [Dkt. 35]. On August 25, 2026, this Court ordered Plaintiff to file an amended complaint by September 2, 2026. [Dkt. 37] (stating, "[t]he court [] construes plaintiff's notice of voluntary dismissal as a request for leave to amend the pleadings

under Rule 15(a)(2) by removing Count III[.]"). Plaintiff filed a second amended complaint on September 1, 2026. [Dkt. 38].

**FACTUAL ALLEGATIONS**

Plaintiff alleges he worked for the Cook County Department of Environment and Sustainability ("DES") as an environmental engineer from May 2025 until May 2026. Dkt. 38, ¶6.[1] Plaintiff alleges he resigned on May 9, 2026. Dkt. 38, ¶15. Plaintiff alleges his employment with DES became "untenable" upon receiving a "[w]ritten [w]arning[.]" *Id.* Plaintiff does not describe the content of the alleged written warning. Plaintiff alleges that in October 2025, his then-manager, Renante Marante, "coordinated with the Illinois Department of Public Health [] to issue Plaintiff's asbestos inspector professional license with a picture of five kittens instead of a standard professional photograph." Dkt. 38, ¶11.

Plaintiff alleges he filed a "federal RICO action[.]" Dkt. 38, ¶22. Plaintiff previously alleged he filed that suit (the "Prior Lawsuit") on January 19, 2026. Dkt. 6, ¶7. Plaintiff does not identify specific conduct he alleges the unnamed defendant(s) to the Prior Lawsuit committed. Plaintiff alleges his filing of the Prior Lawsuit comprised "protected federal activity." Dkt. 38, ¶18.

Plaintiff alleges that in January 2026, Christopher Antonopoulos, an employee or official of DES, "publicly accused Plaintiff of 'kitten fraud'" in conjunction with Plaintiff's IDPH asbestos inspector's license. Dkt. 38, ¶17. Plaintiff alleges that IDPH re-issued an asbestos inspector's license to Plaintiff on February 4, 2026. *Id.*, ¶18. Plaintiff alleges these events

---

[1] The Cook County Department of Environment and Sustainability is responsible for enforcement of Cook County Environmental Control Ordinance code provisions. Cook Cty. Ordinance §§ 30-1, 30-2(f), *available at* https://library.municode.com/il/cook_county/codes/code_of_ordinances. DES enforces County Environmental code provisions pertaining to four principal areas of commercial activity: "Air"; "Noise"; "Asbestos and Related Substances"; and "Solid Waste and Recycling." Cty. Ordinance § 30-1, Art. III- Art. VI. Plaintiff was assigned to DES' asbestos unit. Dkt. 38, ¶¶6, 12(c).

comprised "synchronized coordination" as an act of "unified government conspiracy" against Plaintiff. *Id.*, ¶18.

Plaintiff alleges that on May 5, 2026, he sent an email correspondence to an unspecified recipient at DES "declining [a] disciplinary meeting." Dkt. 38, ¶13. Plaintiff does not specifically allege the subject matter of the disciplinary meeting he refused to attend. Plaintiff alleges that DES Director Suzanne Malec-McKenna issued a written reprimand to Plaintiff two days later, on May 7, 2026. *Id.*, ¶14.

Plaintiff alleges that on April 15, 2026, Defendant "intentionally made" a software program used by one or more DES employees "non-functional." Dkt. 38, ¶12(d). Plaintiff alleges Defendant made the software non-functional by altering that software through "backend changes[.]" *Id.* Plaintiff alleges Mr. Antonopoulos made a "false claim[]" about whether said software issue had been resolved. Dkt. 38, ¶12(g). Plaintiff alleges the software program became fully "disabled" on May 6, 2026. *Id.*

Without specifying the nature of the meetings, Plaintiff alleges that on March 12, 2026, he was "[b]ann[ed] from meetings" and from "ALJ hearings on his own tickets[,] *i.e.*, citations he had issued as a DES environmental engineer. *Id.*, ¶12(b). Plaintiff alleges that on April 14, 2026, DES "refused to pay for Plaintiff's asbestos inspector refresher training[.]" *Id.*, ¶12(c). Plaintiff alleges that in early May 2026, his "county vehicle [was] vandalized[,]" and the "repair [of the vehicle] blocked until Plaintiff signed a liability shifting incident report[.]" *Id.*, ¶12(f).

Plaintiff cites seven exhibits, lettered A, B, E, F, G, H, and I. Dkt. 38, ¶¶ 11, 12, 13, 14, 16-19. The cited exhibits are not attached to the complaint.

In his first amended complaint Plaintiff sought compensatory damages of $75 million. Dkt. 6, p. 8. Plaintiff still seeks compensatory damages, Dkt. 38, p. 6, but no longer requests a specific

monetary award. *Id.*

## ARGUMENT

Plaintiff's second amended complaint fails to state a claim upon which relief can be granted. In substantial measure, each of Plaintiff's claims— for First Amendment retaliation under 42 U.S.C. § 1983 (Count I), and for violation of the Illinois Whistleblower Act (Count II)— hinge on his contention that he filed a prior lawsuit in early 2026 (the "Prior Lawsuit") (*Crofoot v. Liberty Mutual Personal Ins. Co., et al.*, 26cv00672 (N.D. Ill.), and that his filing of that suit set off a chain of events that culminated in his resignation. However, Plaintiff fails to plausibly allege that the Prior Lawsuit implicated matters of public concern, or whistleblowing, that would serve as a valid predicate to his claims. This Court should dismiss the second amended complaint in its entirety.

### I. Count I Fails to State a Claim for First Amendment Retaliation.

To plead a cognizable claim for First Amendment retaliation, a public employee must allege that: 1) he engaged in constitutionally protected speech; 2) his employer retaliated against him because of that speech; and 3) the alleged retaliation caused him to suffer a materially adverse employment action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). To plead that his speech was constitutionally protected, a plaintiff must allege: 1) that he spoke as a private citizen rather than in his capacity as a public employee; 2) that he spoke on a matter of public concern; and 3) that his interest in expressing the speech is not outweighed by the state's interests as an employer in promoting effective and efficient public service. *Haynam v. City of Chicago*, No. 25cv5339, 2026 U.S. Dist. LEXIS 16869, *5 (N.D. Ill. Jan. 29, 2026) (citing *Lett v. City of Chi.*, 946 F.3d 398, 400 (7th Cir. 2020)). If an employee does not "sp[eak] as a [private] citizen on a matter of public concern[,]" he or she "has no First Amendment cause of action based on his or her employer's reaction to the speech[.]" *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "The determination of whether speech is constitutionally protected is a question of law." *Kubiak v. City*

*of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016).[2] Here, Plaintiff fails to plausibly allege that he spoke on a matter of public concern. The Court need not address either the first or third elements in determining whether the alleged speech is constitutionally protected (speaker's status as private citizen, and employer interest in promoting public service).

### A. Plaintiff's Prior Lawsuit Originated From a Private Dispute Between Landlord and Tenant

Plaintiff sued several insurance companies in the Prior Lawsuit along with his landlord, alleging they conspired against him in violation of federal RICO and other laws. *See* [Dkt. 25] (Joint Status Report) (Def.'s Statement), at 4 (describing eight counts of Plaintiff's Prior Lawsuit).

Plaintiff stated at hearing that his Prior Lawsuit originated from events at his "old apartment," **Ex. A** (Hrg. Tr.) (July 8, 2026), at 5, and further stated he "used [] private rights of action" to advance a claim for damages in the Prior Lawsuit. *Id.* Thus to begin with, Plaintiff concedes that the prior suit originated from Plaintiff's exercise of private rights of action to obtain money damages stemming from matters occurring at his private residence.[3] Such characterization supplies no reason to infer speech implicating matters of public concern.

Plaintiff was obligated under the Federal Rules to attach the complaint from his Prior Lawsuit to the instant suit if he wished for this Court to take judicial notice of allegations contained in the prior complaint. *H.G. Gallimore, Inc. v. Abdula*, 652 F. Supp. 437, 451 n.12 (N.D. Ill. 1987)

---

[2] Plaintiff does not allege that Defendant violated Plaintiff's First Amendment rights pursuant to any policy or practice. Plaintiff's Count I therefore does not attempt to plead Section 1983 liability under *Monell v. Dep't. of Social Serv. of City of N.Y.*, 438 U.S. 658 (1978). *Id.*, 438 U.S. at 690-91 (plaintiff seeking to plead Section 1983 claim against local government entity must adequately allege that "policy or custom" of entity gave rise to the claimed violation of rights). Are you giving him an idea here? Do you need this footnote? The court will not imply him plaeading policy or practice

[3] Plaintiff further does not contest the Prior Lawsuit involved a dispute between Plaintiff and his "landlord" stemming from a "sewage leak" in Plaintiff's apartment. [Dkt. 19] (Joint Status Report) (July 16, 2026) at 3 (Def.'s Statement). Though the characterization of the prior suit as originating from a sewage leak was supplied by Defendant, Plaintiff does not contest this characterization.

(court should "refus[e] to allow incorporation by reference of pleadings in other cases") (citing Fed. R. Civ. P. 10(c)). Plaintiff has not done so. In light of this failure, the Court has no cognizable basis to conclude that the Prior Lawsuit involved matters of public concern, as is necessary for Plaintiff to state a viable claim. *Lett*, 946 F.3d at 400.

### B. **Plaintiff Admits He Pursued the Prior Lawsuit to Advance Personal Interests**

Notwithstanding Plaintiff's failure to attach the complaint from his Prior Lawsuit to his instant complaint, the information Plaintiff acknowledged and disclosed to the Court about the Prior Lawsuit and his motives in pursuing that suit are sufficient for the Court to conclude that the Prior Lawsuit did not entail matters of public concern. Accordingly, the Court should dismiss Count I, with prejudice.

Plaintiff admitted at hearing on July 8, 2026 that he sought to advance his personal interests in the Prior Lawsuit. This concession defeats Plaintiff's assertion that his speech in the Prior Lawsuit entailed speech on matters of public concern. At hearing, the Court asked Plaintiff to explain the "connection" between "the first case" Plaintiff filed (26cv00672) and "this case":

THE COURT:

> [W]hat's the connection between the first case that you filed and this [26cv05025] case?

Plaintiff responded:

PLAINTIFF:

> Yeah, so in paragraph 64 of the RICO complaint *in the previous* [26cv00672] *case*, in the case with Liberty Mutual,[4] I said that the Illinois Department of Insurance, and Suzanne Malec-McKenna, my supervisor, did some adverse actions against me. *I filed* a bunch of different emails *as part_of* ***<u>that case</u>*** to support some damages, and then -- and to also -- but the -- *kind of like [to]* ***defend myself on the docket in case anything happened with my employment***.

[4] Liberty Mutual is one insurance company co-defendant alongside Plaintiff's landlord in the prior suit. *See* discussion, [Dkt. 19] (Mot. to Dismiss), 2, 7.

> *And* ***then*** unfortunately, ***I filed this complaint*** [26-cv-05025] on -- the original complaint on April 30th…

**Ex. A**, at 4-5 (emphasis added). In Plaintiff's own words, a principal reason he advanced the Prior Lawsuit was to protect his employment as a County employee.

The proposition that speech uttered in Lawsuit A for the purpose of constructing a "defen[se]" "in case anything happen[s]" to one's "employment" could supply the basis for a valid First Amendment claim in Lawsuit B that one's own resignation comprised "retaliat[ion]" (Dkt. 38, ¶13) for uttering the Lawsuit A speech, is tautological, and illogical. Confirming that such allegations do not describe an actionable First Amendment claim, it is long settled that "speech that serves a private or personal interest, as opposed to a public one, does not satisfy the standards for First Amendment protections." *Houskins v. Sheahan*, 549 F.3d 480, 492 (7th Cir. 2008); *see also Foggey v. City of Chicago*, 16cv10963, 2018 U.S. Dist. LEXIS 18225, *18-*19 (N.D. Ill. Feb. 5, 2018). Thus, Plaintiff's admission that a central purpose of his speech in the Prior Lawsuit was to advance his own economic interests defeats his First Amendment claim. In light of Plainitff's admission, there are no set of facts which Plaintiff could allege in a second amended pleading which could salvage his Count I. The Court should dismiss Count I with prejudice.

### C. The Subject Matter of Plaintiff's Alleged Speech Does Not Implicate Matters of Public Concern

Setting aside the admissions Plaintiff has made about the private character and motives of the Prior Lawsuit, Plaintiff fails to plausibly allege that the Prior Lawsuit involved matters of public concern. Plaintiff previously alleged the Prior Lawsuit originated from conditions Plaintiff observed at a "multi-residential building." [Dkt. 6] (First Am. Compl.), ¶7. It would require impermissible speculation for this Court to impute a public interest on the basis of such an allegation of events occurring at a single residential apartment building.

The Court should likewise decline to attach public-concern status to Plaintiff's internal complaint regarding an alleged software problem at work, and similar in-office issues. *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("[m]erely discourteous working environment" does not meet the standard for a First Amendment claim).

### D. **Plaintiff Fails to Plausibly Allege Constructive Discharge**

Plaintiff fails to plausibly plead constructive discharge. There are two forms of constructive discharge recognized at law: 1) where the employee claims he was forced to resign because of intolerable work conditions; and 2) where the employee resigns after his "employer acts in a manner so as to have communicated to a reasonable employee that []he will be terminated." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). Plaintiff's allegations are inadequate.

#### i. *Intolerable Work Conditions*

Plaintiff alleges he resigned from DES on May 9, 2026. Dkt. 38, ¶15. Plaintiff fails to plausibly or sufficiently allege that intolerable work conditions prompted his resignation. A plaintiff alleging constructive discharge must allege facts from which a fact-finder can "infer[] that a reasonable person would have felt compelled to resign because the working conditions were so intolerable." *Lara v. Rock Valley Coll. Police Dep't.*, No. 22cv50014, 2023 U.S. Dist. LEXIS 36689, *11 n.5 (N.D. Ill. Mar. 6, 2023) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)). A plaintiff accordingly must allege a work environment "even more egregious" than a "hostile" work environment to state a claim of constructive discharge. *Lopez v. Vill. Disc. Outlet Inc.*, No. 23cv16201, 2024 U.S. Dist. LEXIS 140214, *8 (N.D. Ill. Aug. 6, 2024) (quoting *Scaife v. U.S. Dep't. of Veterans Affs.*, 49 F.4th 1109, 1119 (7th Cir. 2022)); *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 578 (7th Cir. 2005) (explaining that doctrine of constructive discharge

is "limited to egregious cases" and "occurs when an employee resigns because working conditions are so intolerable that a reasonable employee would feel compelled to quit").

Plaintiff's cursory allegation that an unknown person vandalized his County-issued vehicle— without specifying how the alleged vandalization affected Plaintiff's ability to work—fails to allege an intolerable work condition. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) ("[o]ne threat and raised voices would not rise to the level of a hostile work environment, and so it also cannot be the basis for [a] constructive discharge claim.") (citing *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000)). As to Plaintiff's remaining claims, including his allegations of third-party software problems, Dkt. 38, ¶¶12(d), (g), Plaintiff fails to allege concrete facts plausibly suggesting a link of causation between his alleged complaining about software failure(s) (and/or other issues), and his resignation. *Williams v. Chi. Bd. of Educ.*, 24-CV-11729, 2026 U.S. Dist. LEXIS 68213, *14 (N.D. Ill. Mar. 30, 2026) ("Because Williams does not allege concrete facts that suggest causation between his reporting and his constructive discharge, he fails to state a whistleblower claim.").[5]

ii. *DES did not Communicate Imminent Discharge*

Plaintiff does not plausibly allege he resigned because DES acted in a manner which communicated to Plaintiff his termination was imminent. A working condition does not become intolerable or unbearable merely because a "prospect of discharge lurks in the background." *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004). Plaintiff newly alleges that Defendant "[s]chedul[ed] [] disciplinary/termination hearings" for Plaintiff between "April 27, 2026 and May 7, 2026." Dkt. 38, ¶12(3) (further alleging that this comprised "suspicious timing"). Whereas Plaintiff previously alleged that DES Director Malec-McKenna issued Plaintiff a written

[5] Plaintiff alleges, without supporting detail, that Defendant "block[ed]" Plaintiff's "unemployment claim," [Dkt. 36], ¶20, but this event could not have caused Plaintiff's resignation, as it post-dated that resignation.

reprimand for insubordination on May 7, 2026 for his refusal to attend a meeting on May 5, 2026, *see* Dkt. 6, ¶10(d), at no point did Plaintiff allege in his original or first amended complaint that DES communicated the prospect of a "termination hearing" to Plaintiff on or before May 9, 2026. In the absence of even a single specific detail— such as the time or place of any purported "termination hearing"— Plaintiff's new rote allegation fails to pass muster. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (to satisfy Rule 12(b)(6), a plaintiff must "provid[e] some specific facts to ground [his or her] legal claims[.]").

* *

Plaintiff also fails to plausibly plead any facts supporting an inference that the written reprimand which Plaintiff alleges Director Malec-McKenna issued to him on May 7, 2026, comprised an adverse action precipitated by any protected First Amendment activity. Dkt. 38 (p. 7).

## II. Count II Fails to State a Claim.

The Court should dismiss Count II. The Illinois Whistleblower Act was created "to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employers." *Huang v. Fluidmesh Networks, LLC*, 16-cv-9566, 2017 U.S. Dist. LEXIS 111608, at *6 (N.D. Ill. July 18, 2017) (quoting *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶99 (Ill. App. Ct. 2015)). Plaintiff alleges Defendant violated Sections 15(b) and 20 of the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/15 and 740 ILCS 174/20.

### B. Plaintiff Fails to State a Claim Under 740 ILCS 174/15

Plaintiff alleges Defendant violated Section 15(b) of the Illinois Whistleblower Act ("IWA"). To state an actionable cause of action under IWA Section 15(b), an employee must allege an adverse employment action by his or her employer, in retaliation for the employee's disclosure

to a government or law enforcement agency of a suspected violation of a "State or federal" law, rule, or regulation. *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶15 (Ill. App. Ct. 4th Dist. 2017) (citing 740 ILCS 174/15(b) and *Taylor v. Bd. of Educ.*, 2014 IL App (1st) (Ill. App. Ct. 2014)).

1. Plaintiff's Filing of a "RICO Action" to Vindicate Personal Interests Is Insufficient as an IWA Predicate.

The "purpose" of the IWA is to "protect statutorily defined employees who report violations of state or federal laws, rules, or regulations 'because the reported wrongful conduct or unsafe condition affected the health, safety[,] or welfare of Illinois residents ***as a whole***.'" *Sweeney*, 2017 IL App (4th) 160492, ¶19 (citation omitted) (emphasis added). Accordingly, Plaintiff's filing of a federal civil "RICO action" relating to issues that occurred at his private residence— *see* Dkt. 38, ¶22, Ex. A, p. 5— in a lone apartment building, *id.*, fails to suffice as an IWA predicate, as such issues would not implicate Illinois residents as a whole.

2. Plaintiff Fails to Plausibly Allege an Adverse Action

Plaintiff does not plausibly allege that Defendant took any adverse action against him within the meaning of the Illinois Whistleblower Act. 740 ILCS 174/5 ("[a]dverse employment action" means an action that "a reasonable employee would find materially adverse[;]" an "action is materially adverse when it could dissuade a reasonable worker from disclosing or threatening to disclose information protected" under Section 15 of the IWA, or from refusing to participate in illegal conduct). For the reasons discussed above, Plaintiff fails to plausibly plead any adverse action in the form of a constructive discharge, (*supra*, §I(D)). Plaintiff previously alleged that DES Director Malec-McKenna reprimanded Plaintiff in writing on May 7, 2026 for "insubordination" because he refused to attend a meeting, Dkt. 6, ¶10(d), but Plaintiff's allegation of his own insubordination fails to supply a plausible IWA whistle-blower

predicate. *Black v. Lane*, 22 F.3d 1395, 1408 (7th Cir. 1994) (though trial courts are instructed to draw reasonable inferences in a plaintiff's favor in resolving a Rule 12(b)(6) motion, court "has no duty to conjure up allegations in order to bolster the plaintiff's chances of surviving a 12(b)(6) motion to dismiss.") (quoting *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 444 (1st Cir. 1990) (internal quotations omitted).

3. Plaintiff Otherwise Fails to Plausibly Allege the Necessary Elements to State a Claim Under 740 ILCS 174/15

Plaintiff generically contends that he "disclosed information he reasonably believed showed violations of law, rule, or regulation[.]" Dkt. 38, ¶27. But apart from his pleading of a federal "RICO" violation by his landlord and several insurers— a predicate which fails for reasons noted above— Plaintiff does not cite any specific rule, regulation, or statute he would urge some unidentified party violated, to support his Count II. Plaintiff's IWA claim therefore fails. *Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, at ¶¶ 42, 44 (Ill. 2019) (affirming dismissal of IWA claim where plaintiff "fail[ed] to cite any state or federal law, rule, or regulation that defendant violated").

4. Plaintiff Cannot State an IWA Claim on the Basis of Statements Made to His Employer

Plaintiff's claim under 740 ILCS 174/15 fails for the independent reason that there is no cause of action under the IWA where an employee reveals information solely to his or her own employer. *Malec v. City of Joliet*, 22cv5312, 2023 U.S. Dist. LEXIS 75710, *24 (N.D. Ill. 2023) (citing *Sweeney*, 2017 IL App (4th) 160492, ¶15); *Zelman v. Hinsdale Twp. High Sch. Dist. 86*, 10cv00154, 2010 U.S. Dist. LEXIS 120147, *4 (N.D. Ill. 2010); *Clark v. Moline Pub. Library*, 09cv4054, 2010 U.S. Dist. LEXIS 6143, *10 (C.D. Ill. 2010); *Riedlinger v. Hudson Respiratory*

*Care, Inc.*, 478 F. Supp. 2d 1051, 1054 (N.D. Ill. 2007). As such, Plaintiff cannot state an IWA claim based on his internal statements to, and conversations with, DES personnel.

### B. **Plaintiff Fails to State a Claim Under 740 ILCS 174/20**

Section 20 of the IWA proscribes an employer from "tak[ing] retaliatory action against an employee for refusing to participate in an activity that [] employee has a good faith belief that such participation would result in a violation of a State or federal law, rule, or regulation[.]" 740 ILCS 174/20. Plaintiff nowhere cognizably alleges that he refused to participate in any activity which violated a specifically-identified statute, rule, or regulation— as is necessary to state a claim under IWA Section 20. Though Plaintiff alleges he "refused to participate in what he believed was a retaliatory scheme[,]" Dkt. 6, ¶26, this amounts to a circular assertion that Plaintiff refused to participate in Defendant's retaliation against him. Unsupported by any citation of a state or federal law allegedly violated, such allegation fails to state a claim under IWA Section 20. *Roberts*, 2019 IL 123594, at ¶44 (affirming dismissal of IWA Section 20 claim where plaintiff "fail[ed] to cite any state or federal law, rule, or regulation that defendant violated").

## III. **Plaintiff Cannot Rely on Documents From Other Parts of the Docket to Attempt to Avoid Dismissal.**

Plaintiff cites numerous documents in his complaint which are not attached to his pleading. [Dkt. 38, p. 7] (citing documents which Plaintiff characterizes as "Marquee Exhibits"; documents previously filed as a "Notice of Filing" as Dkt. 7 in this proceeding) (*see id.*). Nor did Plaintiff attach such documents to his original or first amended complaint. The Court may not consider these documents in assessing the sufficiency of Plaintiff's allegations, for two reasons. First, the documents are neither written instruments within the meaning of Federal Rule 10(c),[6] nor are they

[6] Fed. R. Civ. P. 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

documents subject to judicial notice. The Seventh Circuit has explained the limitations on a court when considering documents in adjudicating a R. 12(b)(6) motion to dismiss:

> [plaintiff has] attached a variety of documents to her complaint, including, for example, the investigator reports that culminated in the issuance of the warrant for her arrest. [Fed. R. Civ. P.] 10(c) provides that "written instruments" attached to a pleading become part of that pleading for all purposes. Thus, when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint. The traditional understanding of an instrument is a document that defines a party's rights, obligations, entitlements, or liabilities— a contract, for example.
>
> Most of the documents that [plaintiff] has appended to her complaint do not fit within that narrow understanding description of a written instrument. But we have taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.

*Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted). Here, the documents Plaintiff identifies in his complaint— primarily, emails— are neither "written instruments," nor are they subject to judicial notice. Moreover, the documents themselves are not submitted as standalone documents for the Court's consideration, but rather, Plaintiff attaches his own subjective legal characterizations of those documents within the same May, 18, 2026 "Notice of Filing." *See, e.g.*, [Dkt. 7] (May 18, 2026) at p. 1, ¶3 (Pl. characterizing various emails assembled among other documents referred to as 'Exhibit E' as "demonstrate[ing] synchronized coordination between internal county actors and external state regulators on February 4, 2026"); *id.* at p. 9 (characterizing an email as one in which "Plaintiff rebuts Chris [Antonopoulos]'s arguments imposing discipline"). For this additional reason— owing to such intertwined legal argument—

the Court should not consider the constituent documents within Plaintiff's May, 18, 2026 Notice of Filing in adjudicating Defendant's Motion to Dismiss.

IV. **Plaintiff's Request for Punitive Damages Should Be Stricken.**

Plaintiff's request for punitive damages should be stricken. (Dkt. 38, p. 6) Punitive damages are not available to Plaintiff in this matter. *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983"); *Lagrone v. Hall*, No. 91cv7133, 1992 U.S. Dist. LEXIS 17945, *19-*20 (N.D. Ill. 1992) ("[p]unitive damages are not recoverable against a municipality in a Section 1983 action"); *Williams v. Chi. Bd. of Educ.*, 2026 U.S. Dist. LEXIS 68213 at *23 Ill. Mar. 30, 2026) (stating, "[defendant] is correct" that punitive damages "are not available" under the Illinois Whistleblower Act). Accordingly, Plaintiff's request for punitive damages should be stricken. Fed. R. Civ. P. 12(f) (court may "strike" from a pleading "any…redundant, immaterial, [or] impertinent" matter).

**CONCLUSION**

For the reasons set forth above, Defendant respectfully requests this Court grant Defendant's Motion, and dismiss Plaintiff's Second Amended Complaint with prejudice.

Dated: October 9, 2026

Respectfully submitted,

EILEEN O'NEILL BURKE
Cook County State's Attorney

By: /s/ *W. Clifton Holmes*
W. Clifton Holmes
Assistant State's Attorney
Labor and Employment Section
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
Telephone: (312) 603-7819
clifton.holmes@cookcountysao.org