# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN A. CROFOOT, | ) | Case No. 26 C 5025 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COOK COUNT ILLINOIS, | ) | Chicago, Illinois |
| | ) | July 8, 2026 |
| Defendant. | ) | 9:19 a.m. |

TRANSCRIPT OF PROCEEDINGS - STATUS HEARING
BEFORE THE HONORABLE MARTHA M. PACOLD

APPEARANCES:

For the Plaintiff: MR. BRIAN A. CROFOOT
Pro Se
4180 N. Marine Drive, #1501
Chicago, Illinois 60613

For the Defendant: COOK COUNTY STATE'S ATTORNEY'S OFFICE
BY: MR. W. CLIFTON HOLMES
500 Richard J. Daley Center
Chicago, Illinois 60602

Court Reporter: KATHLEEN M. FENNELL, CSR, RMR, FCRR
Official Court Reporter
219 South Dearborn Street, Room 2328A
Chicago, Illinois 60604
Telephone: (312) 435-5569
Kathleen_Fennell@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

(Call to order.)

THE CLERK: Calling Case No. 26-cv-5025, Crofoot v. Cook County Illinois for status hearing.

Counsel, state your names for the record, starting with plaintiff's counsel.

MR. CROFOOT: Hello. I'm Brian Crofoot, the plaintiff pro se.

THE COURT: Good morning.

MR. HOLMES: Good morning, Your Honor. Assistant State's Attorney W. Clifton Holmes on behalf of defendant.

THE COURT: Good morning. Okay. We're here for a status hearing.

You know, I think initially I may have set it because of -- there were some issues with the initial status report, and so I just wanted to check in on -- maybe talk live to the parties. So I think that's why I originally set this hearing today.

So I'd be, I guess, grateful for any just overview general background, and then we can talk about the status as well.

I did see, just reviewing the docket, that there's a motion to dismiss. I did set a briefing schedule on that, so we can talk about that schedule. Does that work for the parties?

In addition, there was a notice of related case filed by Mr. Crofoot last week, and then I also entered an order responding to that notice of related case and essentially asking whether this case should be reassigned to the calendar of Judge Cummings, but I -- so I guess there's -- all of that is to say there are various issues that we should probably cover at today's hearing, but maybe best would be to start with just an overview, a short overview, of what is the case about and go from there.

MR. CROFOOT: Yes. I should probably start, the plaintiff.

This case is ultimately about -- the related case, the prior lawsuit, is a RICO action that I filed against Liberty Mutual and BJB Properties regarding an incident at my old apartment in Chicago, the Rogers Park neighborhood. And it happened in June of last year, and then I filed a complaint in January of this year against those parties.

And then as part of -- so that case is separate, but I notified my managers at Cook County, I work for the Department of Environment and Sustainability in Asbestos Demolition Division, and I notified my managers when I filed the action, just as a courtesy to -- to try to avoid any conflicts of interest.

And then over the course of from January to May, when I quit, my -- I allege that my bosses did a bunch of different

adverse actions against me and which is detailed in the complaint.

And then more recently, I filed the status report because I got denied unemployment, and where the IDES, the unemployment office, said that Cook County said some things and gave them documents.

And then that's why I filed the initial status report. And then I apologize for filing it on my own, but I'm glad that we were able to file one together a couple -- about a week later.

THE COURT: Okay. What is the connection -- I'm sorry, you may have already kind of covered this, but what's the connection between the first case that you filed and this case?

MR. CROFOOT: Yeah, so in paragraph 64 of the RICO complaint in the previous case, in the case with Liberty Mutual, I said that the Illinois Department of Insurance, and Suzanne Malec-McKenna, my supervisor, did some adverse actions against me. I filed a bunch of different emails as part of that case to support some damages, and then -- and to also -- but the -- kind of like defend myself on the docket in case anything happened with my employment.

And then unfortunately, I filed this complaint on -- the original complaint on April 30th, and then the amended complaint on approximately May 12th, give or take a day, to

update just some of the adverse actions and to include the evidence of the first -- the written -- the reprimand that she wrote.

THE COURT: Okay. Was the incident that you -- that is the subject of the first lawsuit something related to environmental issues, or was it ---

MR. CROFOOT: It was -- it was in my old apartment, and I used my private rights of action under -- under eight different causes of action. RICO allows a private right of action. And the Illinois Consumer Fraud Act is another count that I -- that allows private rights of action, but it happened in my old apartment.

THE COURT: Okay, but what was it? I mean, I guess I'm trying to understand --

MR. CROFOOT: Oh, yeah.

THE COURT: -- what's the connection between that case and this case, and I -- maybe it has to do with the nature of whatever this incident was.

MR. CROFOOT: Yeah. So it's not necessarily the nature of it. It's what happened after.

In January, I gave a copy of the complaint that I had, I emailed it to Suzanne Malec-McKenna, my director, just as a -- as a gesture of transparency. And then a bunch of different adverse actions happened that were closely tied to the previous lawsuit's docket.

So if I would file something, my supervisors would do something -- accuse me of different things of dishonesty, and -- and then -- and then notably when -- when Judge Cummings issued a dismissal without prejudice, asking me to refile the complaint, on that specific day, I was asked to stop attending administrative law hearings on all the citations I issued, and then -- and then I was also accused of -- basically of -- of forging some different mileage, time and mileage records, or not submitting them, which is a serious accusation of misconduct.

So -- but my supervisor in the status report that I filed on my own in June, I said to establish a fact that Suzanne Malec-McKenna, my former director, she had regular meetings with insurance companies and the Illinois Department of Insurance, and specifically Swiss Reinsurance Company, and she said that in just the day before Thanksgiving.

And there's other issues that were -- they're kind of like suspicious that will be shown during discovery.

But the reason why it's probably this is related matters is because I'm the common -- the common denominator with both cases.

THE COURT: Okay.

MR. CROFOOT: And I'm not sure if I'm going to -- if consolidation is the best course of action at the moment.

THE COURT: Okay. Well, we can come back to the issue

of, you know, whether there's a relationship between the cases. I think that, you know, in any event, if there is an argument that the cases should be related, then that sort of motion for relatedness would typically be filed in the lower-numbered case, the first filed case, so that would be the case before Judge Cummings.

So -- but there is also, you know, an interest of judicial economy and efficiency, and so I cited a case in the last order that is a Seventh Circuit case, *Ewing v. Carrier,* from the Seventh Circuit in 2022 that talks about the interest in judicial economy and, you know, having related cases proceed before one judge in the interest of judicial efficiency. So that's why I raised this issue once I saw the notice of related case.

But why don't we come back to that in a moment. So let's just talk about -- or, I'm sorry. I think we were still trying to get an overview of the case, and I gave the plaintiff a chance to describe that.

Let me go to the defense.

MR. HOLMES: Certainly. Thank you, Your Honor, and good morning.

Your Honor, defendant filed a motion to dismiss, since Your Honor is aware, on June 29th. There are three counts to plaintiff's action. He has Count I alleging a Section 1983 violation for First -- alleged First Amendment retaliation, a

Count II stating -- attempting to state an Illinois Whistleblowers Act claim, and Count III attempts to state a common law retaliation claim.

Your Honor, the defendant takes the position that under 12(b)(6) plaintiff has failed to state a claim and that the complaint should be dismissed.

If I might be heard, Your Honor, just very briefly about the related action issue, I'll say, Your Honor, that I've only -- because that other action, the complaint from that action was not attached by Mr. Crofoot to any filing in this docket in this case, I only just had an opportunity this morning to download the complaint from that action, so I've only had an opportunity to review it preliminarily and briefly. And also our office would have to sign off on our position for the July 16th statement that Your Honor has ordered concerning relatedness.

However, at this juncture, I would consider it highly unlikely that the County would take the position that these are related actions, and it's highly likely that the County will take the position that these are unrelated actions.

I'll point out that there are no common defendants. As Mr. Crofoot just stated himself, the gravamen of the first case appears to be a dispute with his landlord, and this is an employment -- alleged wrongful discharge action, retaliatory discharge action, revolving around Mr. Crofoot's employment.

So I don't know that it's going to meet the criteria for a related action, but we'll state our formal position on July 16th on that, Your Honor.

THE COURT: Okay.

Okay. So let's then talk about just the schedule in this case and, you know, what deadlines already have been set and do those -- does that schedule make sense? Does it work for the parties?

So I guess the first deadline that we have is the joint status report, or if the parties don't agree or you can't coordinate -- so typically in most cases, it's quite common that I'll ask the parties to file a joint status report. I just -- you know, I would say the vast majority of the cases, the parties are able to do that, and that includes -- a joint status report doesn't mean that everybody has to agree on every issue. It just means I'm looking for one filing from the parties. That's what makes it joint, but --

MR. HOLMES: Your Honor --

THE COURT: -- it doesn't mean that --

MR. HOLMES: -- in fact, Your Honor, we were able to make that joint filing, Judge --

THE COURT: Ah.

MR. HOLMES: -- several days back.

THE COURT: Yes, I see.

So thank you. But I guess I'm just trying to clarify

that -- I mean, part of the idea of having a joint report is that it does require the parties to confer and discuss what are your positions on issues and hopefully reach agreement on as much as possible.

But, I mean, I realize it's not always possible for people to agree on everything. I mean, you're in litigation, so I -- if you can't agree on some issue, that doesn't mean -- all that means is, you know, one of two things: Either file the joint status report but just each of you states your position separately, but then you need to label it, you know, make clear this is plaintiff's position, this is defendant's position, and it's still one joint filing so you've each had a chance to see what each other's going to say, but then I can see that, you know, you don't agree on something.

Or if it's not practicable -- I realize sometimes people just have, for whatever reason, it's just not working, you can't coordinate enough to file the joint report. So if you can't do that, just, you know, each of you can file a separate report, and then that sometimes it's just simpler.

MR. HOLMES: And so, Your Honor, in fact, we had filed a joint report on June 24th, plaintiff and defendant together, so we've made that joint filing and --

THE COURT: Okay.

MR. HOLMES: -- I think we've crossed -- crossed that bridge successfully.

THE COURT: Okay. Great.

MR. HOLMES: Yeah.

THE COURT: Well, that's fantastic, but, I mean, I get that -- so because this next report is about this relatedness issue, and, you know, should this case and the first-filed case that's before Judge Cummings be considered related, I don't know. But maybe you'll have different positions on that issue, and if you do, then I guess I just wanted to explain in advance of that deadline that if you need to do separate reports, then you can on -- especially when it comes to something that's kind of -- it's procedural, but it also has substantive, you know, aspects.

MR. HOLMES: Certainly. We take that guidance, and we will carry it forward, Your Honor. Thank you.

THE COURT: Okay. Great. Thank you.

MR. HOLMES: Perfect. Thank you, Your Honor.

THE COURT: All right. So that's the -- so let's just review the upcoming deadlines. July 16th is that joint report on relatedness.

Then the next deadline after that is plaintiff's response to defendant's motion to dismiss. That deadline is August 4th.

After that, defendant's reply is due by August 18th. So those are the deadlines that we've already set. I guess, do those deadlines work for the parties, or would you like some

different schedule or any extensions or anything?

MR. CROFOOT: Oh, yes. That deadline works. I've drafted my motion -- or my opposition to the motion to dismiss.

THE COURT: Okay.

MR. CROFOOT: I'm probably going to file it in the next couple days.

THE COURT: Oh, okay.

MR. CROFOOT: My goal is to file it before addressing consolidation.

THE COURT: Okay.

MR. CROFOOT: Just so I have that on record.

THE COURT: Okay. That works fine. I mean, if it comes in before the deadline of August 4th, I mean, I guess does the defense want to just leave the same reply deadline, or did you want to --

MR. HOLMES: It would work best for defendant, Your Honor, if we could leave that August 18th date. I've got somewhere between 8 and 10 depositions coming up --

THE COURT: Oh.

MR. HOLMES: -- over the next five to six weeks, so I would appreciate the current date greatly.

THE COURT: Yeah, that's fine.

Okay. So that reply is due August 18th still. Or I'll just leave all those same deadlines in place, the ones I just walked through.

Okay. Is there anything else we should discuss?

MR. HOLMES: Not at this time from defendant's standpoint, Your Honor.

THE COURT: Okay.

MR. CROFOOT: I can't think of anything either.

THE COURT: All right.

As far as what to expect after you do these filings, I mean, I guess I'll need to take a look at the relatedness issue once you file that report, and then I'll probably just send you a -- you know, post a minute entry that just gives my reaction to that.

And then -- or I may, if I need -- if I have questions or want to discuss it further, I might set another status hearing.

I guess same goes for the motion to dismiss. I may just issue a ruling on the docket, or if I have questions or think it would be helpful for us to do an argument or to rule from the bench instead of in writing, I'll just schedule either a telephone hearing or an in-person status hearing.

MR. HOLMES: Thank you, Your Honor.

THE COURT: Okay.

MR. HOLMES: We'll look out for that.

THE COURT: All right. And if at any point you need some extension of time, you can always just file a motion for an extension of time on these different deadlines.

MR. HOLMES: Perfect. Thank you, Your Honor.

MR. CROFOOT: Thanks.

THE COURT: All right. Thank you both.

MR. HOLMES: Thank you. Have a good day.

THE COURT: You, too.

(Concluded at 9:38 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Kathleen M. Fennell* *August 13, 2026*
Kathleen M. Fennell Date
Official Court Reporter