FILED
10/21/2026
THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT
BC

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Case No: 1:26-CV-05025

| | | |
|---|---|---|
| BRIAN A. CROFOOT, | ) | **Case No.** 1:26-cv-05025 |
| *Plaintiff,* | ) | |
| | ) | **Hon. Judge:** Martha M. Pacold |
| v. | ) | **Magistrate Judge:** Maria Valdez |
| | ) | |
| COOK COUNTY, ILLINOIS, | ) | |
| *Defendant.* | ) | |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**To The Honorable Judge, Defendant, and Jury:**

Plaintiff Brian A. Crofoot, pro se, respectfully Opposes Defendant Cook County's Motion to Dismiss the Second Amended Complaint (Dkt 42). Plaintiff's petitions are **Actual Notice** of the hazardous conditions at his former apartment. Plaintiff's Second Amended Complaint (Dkt 38) states plausible claims for relief under 42 U.S.C. § 1983, and the Illinois Whistleblower Act.

Cook County's Motion brushes aside the allegations and exhibits, relies upon stricken docket entries, needlessly attacks a dropped count, while cherry-picking from previously docketed exhibit packs. To the contrary, Director Malec-McKenna's May 7, 2026 formal Final Written Warning, **Exhibit A** (Dkt 7, pgs 5-9), directly supplies the foundation for all claims that survive against it, now and in the future. Defendant's Motion should be denied and this Court should Order Cook County to Answer Plaintiff's Second Amended Complaint.

## Table of Contents


I. Legal Standards 2

II. Introduction 3

III. Count I states a First Amendment retaliation claim 4

A. Plaintiff petitioned as a citizen, not pursuant to his job. 4

B. The Prior Lawsuit addressed a matter of public concern. 5

C. The Final Written Warning is the adverse action and the causal link. 6

D. The stated reasons are plausibly pretextual. 6

E. The County is a proper *Monell* defendant. 9

IV. Count II states an Illinois Whistleblower Act claim 11

A. Plaintiff disclosed a matter of public safety. 11

B. Prohibited conduct is documented. 12

V. Conclusion 14


## I. Legal Standards

Pro se pleadings are liberally construed, and not held to the same standards as lawyers. Fed. R. Civ. P. 8(e); *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). A Rule 12(b)(6) motion tests plausibility, not proof. The Complaint must contain enough factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Court draws reasonable inferences in Plaintiff's favor. If any claim is deficient, leave to amend should be freely given especially for pro se litigants. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis,* 371 U.S. 178, 182 (1962).

## II. Introduction

This is a civil rights and employment retaliation case. It is not a rerun of Plaintiff's private lawsuit against Liberty Mutual and other private parties, *Crofoot v. Liberty Mutual Personal Insurance Co.*, No. 1:26-cv-00672 (N.D. Ill.) (the "Prior Lawsuit"). The prior lawsuit's First Amended Complaint stands as a milestone in consumer protection litigation. At its core, it is a matter of public safety. That case is not *"insubordinate" "nuisance action"* misconduct **(Exhibit A,** and Defendant's own position in **Dkt 24, pg 4).** The record speaks for itself.

The question here is whether Cook County took adverse employment action against Plaintiff because he petitioned a federal court as a private citizen.

Plaintiff filed the Prior Lawsuit on January 19, 2026, the **Marquee Exhibits** on February 12, 2026, including Plaintiff's photos of the damaged electrical systems (Dkt 14), and a First Amended Complaint on March 13, 2026 (Dkt 31). In this case, he alleges that County officials then escalated discipline, impaired his ability to do his job, manipulated his professional license, issued a signed **Final Written Warning** on departmental letterhead that cited his federal-court activity **(Ex. A,** Dkt 7, pg 5), and left him no reasonable choice but to resign on Saturday, May 9, 2026. Those allegations, taken as true, state claims under 42 U.S.C. § 1983 and the Illinois Whistleblower Act.

## III. Count I states a First Amendment retaliation claim

To plead First Amendment retaliation under 42 U.S.C. § 1983, Plaintiff must allege that he engaged in protected activity, that he suffered a deprivation likely to deter a person of ordinary firmness, and that the protected activity was a motivating factor. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *George v. Walker*, 535 F.3d 535, 538 (7th Cir. 2008). Public-employee speech is protected when the employee speaks as a citizen on a matter of public concern **(Marquee Exhibits).** *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). A plaintiff need not exhaust administrative procedures prior to suit under § 1983. *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496 (1982).

### A. Plaintiff petitioned as a citizen, not pursuant to his job.

The right to petition the courts is protected. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011). *Garcetti* removes protection only when the speech itself is ordinarily within the employee's official duties. *Lane v. Franks*, 573 U.S. 228, 240 (2014). Speech is not unprotected merely because it concerns information learned at work. *Id.*

Plaintiff's ordinary duties as an Environmental Engineer II were field inspections and code citations concerning asbestos and demolition in the villages outside of Chicago. The City of Chicago, not Cook County, had formal enforcement authority at that property. They did not include suing his former landlord, a property manager, or a private insurer over conditions in a residence. Plaintiff sued private parties, in his own name, about **his own former residence** and the events that followed. That is citizen speech.

Defendant's broader reading — that a public employee loses the right to sue if management does not approve or if the lawsuit uses skills learned at work — is the reading the Founders and *Lane* rejected. Public employees do not renounce their citizenship when they accept employment. *Pickering*, 391 U.S. at 568; *Lane*, 573 U.S. at 236; and the First Amendment itself.

**B. The Prior Lawsuit addressed a matter of public concern.**

Speech addresses a matter of public concern when it relates to a matter of political, social, or other concern to the community. *Connick v. Myers*, 461 U.S. 138, 146 (1983). Alleged safety hazards in a multi-unit residential building are not a private personnel grievance **(Marquee Exhibits 1 to 5,** photos, Dkt 14, pgs 2-6, in the prior lawsuit; SAC ¶ 10). The defendants in the Prior Lawsuit being private parties does not erase that public concern.

Plaintiff also docketed a **July 2020 City of Chicago administrative order** requiring the property owner to obtain structural permits and stamped drawings for **more than forty apartments,** including Plaintiff's **(Exhibit II,** Docket #32, pgs 3-4, in the prior lawsuit). The owner's later payment of a fine, without completing that work, is part of why Plaintiff went to court. The Court may consider that public order as context. It does not need to decide the landlord-tenant-insurance dispute. It needs only to see that the petition was about building safety, not about Plaintiff's paycheck.

*Houskins v. Sheahan,* 549 F.3d 480 (7th Cir. 2008), is different. That speech concerned a workplace altercation and the discipline that followed. This speech concerns conditions in a private residence and a private lawsuit against private parties.

### C. The Final Written Warning is the notable adverse action and the causal link.

On May 5, 2026, Plaintiff declined a disciplinary meeting and said in writing that he believed the meeting was retaliatory in light of his federal case **(Ex. A-2).** On May 7, 2026, Director Suzanne Malec-McKenna issued a personally signed Final Written Warning on departmental letterhead **(Ex. A-1).** The warning cited Plaintiff's federal-court activity and threatened further discipline, up to and including termination. Plaintiff resigned on May 9, 2026.

That document does three things. It is an official act. It identifies the protected activity as a reason for discipline. And the threat of termination is a deprivation likely to deter an ordinary employee. Close timing supports motive at the pleading stage. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). So does Plaintiff's performance record: as of February 11, 2026, he had issued about 80 percent of the citations assigned to his team **(Ex. H,** Dkt 7, pgs 10-12).

The same sequence includes impaired OnBase access **(Exs. G,** Dkt 7, pgs 13-16, 28), pressure related to his County vehicle, and interference with his asbestos-inspector credential **(Exhibit E,** Dkt 7, pgs 17-26). Plaintiff does not ask the Court to try those disputes now. Together with the written warning, they make retaliation plausible.

### D. The stated reasons are plausibly pretextual.

Defendant calls the warning insubordination. Plaintiff's May 5 email tied the refusal to the federal case. The warning then cited that federal-court activity. A refusal to attend a meeting can be a personnel issue **(Exs. A,** Dkt 7, pgs 4-6). It does not, without more, convert a citizen lawsuit into a crime. See 28 U.S.C. § 1654 – Signed by President Washington in 1789.

After receiving the Prior Lawsuit on January 20 (before its publication on PACER) and 23, Manager Christopher Antonopoulos accused Plaintiff of manipulating time, mileage, and OnBase records **(Exs. F-9, F-S-1,** Dkt 34, pgs 12-13, 17-18, prior lawsuit). Those accusations were not accompanied by a formal finding that Plaintiff altered a government record. Accusing an employee of falsifying workplace records, licenses, and court exhibits, while enlisting the State in rejecting service of process on a defendant, after he petitions the courts, and the same defendant later filing a Motion To Dismiss during a stay immediately after his resignation, is evidence that the employer is recasting protected activity as *"nuisance action"* misconduct. This Court need not decide whether the accusations were true. It is enough that they followed the Prior Lawsuit and sit next to a warning that cited "protected activity in federal court."

On January 23, 2026, days after Plaintiff provided management a copy of the Prior Lawsuit, Director Malec-McKenna made an internal complaint to Human Resources and the Equal Employment Opportunity Office (EEO) about Plaintiff **(Exs. F-4, F-5, and F-6,** Dkt 34, pgs 6-9, of the prior lawsuit). At the pleading stage, that timing supports an inference that the County began building a personnel file in response to the lawsuit and background disclosures, rather than in response to a performance problem **(Ex. F-8,** Dkt 34, pg 11, prior lawsuit).

**Exhibit E** includes the asbestos-inspector credential as it appeared before and after the change: the professional photograph had been replaced with a photograph of five kittens. Plaintiff alleges that this alteration occurred in coordination with County management and the Illinois Department of Public Health in October 2025, **during Director Malec-McKenna's first week**, and that management had been involved in the credential. Notably, Indiana simultaneously issued a clean credential. No agency adjudicated the license as forged.

Manager Antonopoulos nonetheless publicly accused Plaintiff of fraud in connection with it on January 15, 2026 during his first week **(Ex. F-5).** It was then reissued on the same day the Illinois Department of Insurance rejected service of process on Liberty Mutual in the prior lawsuit (Feb. 4; **Exs. E-2, E-4, F-11, F-12).** A credential the employer helped create, later bearing a substituted photograph, and then publicly described as fraud, is not a neutral performance fact. It is part of the misconduct narrative Defendant assembled after Plaintiff circulated the Prior Lawsuit. Alongside Antonopoulos' March 9 accusation that Plaintiff falsified time, mileage, and OnBase records immediately after the prior lawsuit was dismissed without prejudice with leave to amend on March 6, 2026, it supplied a ready-made misconduct narrative after Plaintiff circulated the Prior Lawsuit **(Ex. F-9).** At this stage the Court need not decide whether the credential was irregular. It is enough that Defendant used it as a basis for adverse action without a finding, and that the use followed the protected petition.

Plaintiff's performance record makes a non-retaliatory explanation implausible at this stage. As of February 11, 2026, Plaintiff had issued approximately 80 percent of the citations assigned to his team **(Ex. H).** Defendant's own policies forbid inspectors from scheduling inspections with contractors. Defendant has not identified a production failure, a sustained finding of record falsification, or a license violation adjudicated before the May 7 warning.

Under *Mt. Healthy,* 429 U.S. at 287, Defendant may later try to prove that it would have issued the same warning anyway **(Exhibit A)** or interfered with his asbestos license **(Exhibit E)**. That is a defense, not a pleading requirement. *Gustafson v. Jones,* 290 F.3d 895, 909 (7th Cir. 2002). A high citation rate, followed by a signed warning that cites federal-court activity, rather than legitimate failures, supports the inference that performance was not the reason.

**E. The County is a proper *Monell* defendant.**

Cook County is liable for a decision of a final policymaker or for a widespread custom that caused the violation. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81 (1986). Plaintiff alleges Director Malec-McKenna possessed final authority over departmental discipline. Cook County Code §§ 30-61 and 30-62, alongside the organizational chart, designate the Director as the Department's Chief Executive. Further, a widespread custom exists. Individuals holding this position exercise unreviewable authority to discipline, reassign, and fire employees "on the spot." Director Malec-McKenna signed the warning in her official capacity on departmental letterhead, threatening termination **(Exhibit A).** This single decision by an official wielding such final authority constitutes an actionable municipal act under *Monell. Pembaur,* 475 U.S. at 480–83. The County cannot hide behind standard administrative policies to mask explicit retaliatory intent. *Kilborn v. Amiridis,* No. 23-3196 (7th Cir. 2025).

Defendant's footnote asserts that Count I does not plead municipal liability with complexity while ignoring the warning on **Docket #7 and Rule 8.** Rule 8 requires simple *"everyday"* language without jargon per *Garst.* Paragraphs 9, 13, 14, 23 allege that Director Suzanne Malec-McKenna had authority to issue formal discipline and that she exercised it by signing the May 7, 2026 warning on departmental letterhead, citing Plaintiff's federal-court activity and threatening termination **(Exhibit A, Dkt 7, pgs 5-9).** Because the County routinely permits its Directors to execute immediate, unreviewable personnel actions on the spot, a single decision by an official wielding such final authority, especially when drafted with lawyers, constitutes an actionable municipal act under *Monell. Pembaur,* 475 U.S. at 480–83.

See *U.S. ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374 (7th Cir. 2003) at 378 regarding unintelligible pleadings, *'fishing gold coins from buckets of mud.'* See also *Giglio v. United States,* 405 U.S. 150 (1972) "Brady Rule" as additional context of motive.

Defendant's own motion treats the warning as her act. In **Exhibit A-1,** the Director cited her statutory authority for issuing formal discipline, and copied exact excerpts from Plaintiff's protected email **(Ex. A-2).** If the Court concludes that paragraphs 9, 13, 14, and 23 do not allege her authority with Defendant's requested complexity, Plaintiff requests leave to amend.

Defendant notes that some cited exhibits were not appended to the complaint or docketed. The Complaint's **Exhibit List** references their previously published docket entries on PACER. The claims do not depend on the Court treating some missing files as attached instruments. They rely on the allegations, which Defendant's motion selectively recites and chooses docketed exhibits, while also selectively ignoring exhibits from the same docket entry: the October 2025 credential bearing a photograph of five kittens, the January 2026 fraud accusations, and the May 7, 2026 signed warning. Unattached exhibits may be supplied on amendment, during discovery, or at summary judgment. Their absence does not erase pleaded facts and exhibits.

Finally, the County's *Garcetti* explanation is selective. **Director Malec-McKenna herself petitioned an Illinois court** against a private security company, as executor of her husband's estate, over a failure of building security. *McKenna v. AlliedBarton Sec. Servs., LLC*, 2015 IL App (1st) 133414. Cook County did not treat that private building-safety lawsuit as disqualifying. It later placed her in charge of discipline. This difference in treatment is evidence that the rule being applied to Plaintiff is not a neutral ban on public employees utilizing the court system. **Count I states a claim.**

## IV. Count II states an Illinois Whistleblower Act claim

### A. Plaintiff disclosed a matter of public safety.

The IWA protects an employee who discloses, or refuses to participate in, activity the employee reasonably believes violates a law, rule, or regulation, **or** issues affecting public safety. 740 ILCS 174/15, 174/20. The employee need not obtain a conviction.

Defendant's argument that Count II fails for want of a cited criminal statute is not the law. This is a civil proceeding and Plaintiff's allegations are sufficient. The IWA does not require an indictment, a statutory citation, or specific proof that a crime occurred. It requires a **good-faith belief** that the disclosed activity violated a law, rule, or regulation, **or** posed a substantial and specific danger to public health or safety. 740 ILCS 174/15; *Willms v. OSF Healthcare Sys.*, 2013 IL App (3d) 120450, ¶ 14. Plaintiff disclosed, in a federal lawsuit and to County officials, unresolved structural and electrical hazards in a multi-unit residence that a 2020 City of Chicago administrative order had already required the owner to permit and repair **(Marquee Exhibits, Exs. F-5, F-S-1, Ex. II** of prior lawsuit). He also refused a meeting he believed was punishment for that disclosure **(Ex. A-2).** Whether every inference he drew was correct is a fact question. It is not a pleading defect.

Plaintiff alleges he told County, Chicago, and IDOI officials, and then a federal court, about unaddressed safety violations at his former residence, and about workplace conduct he reasonably believed was retaliatory including impairment of official systems and pressure to accept a false account of his credentials and records (Dkt 31 ¶ 64; **Exhibit F,** Dkt 34, both of the prior lawsuit). He alleges he refused to attend a meeting he believed was pretextual, and

that the County then issued the May 7 warning and made continued work untenable **(Exhibit A).** That is enough at this stage. Whether the belief was reasonable is not a basis for dismissal where the warning itself cites the federal case.

Intolerable conditions, forced resignation, and actual damages are also plausibly alleged. A signed explicit termination threat, Blue Cross' denial of medical access **(Ex. F-3;** ERISA § 510 Interference), impaired access to the system required to do the job, credential manipulation, occurring in a span of months after the Prior Lawsuit, support an inference that a reasonable person would have felt compelled to resign. The subsequent interference with Plaintiff's unemployment claim (June 1) and pension refund (refund dated August 6 – when Plaintiff Opposed the landlord's MTD; received August 11) also support this inference.

**B. Prohibited conduct is documented.**

Plaintiff does not ask the Court to find that any person committed a crime. Good faith and a public-safety disclosure are enough at this stage. Defendant cynically demands Plaintiff specify criminal conduct despite the law. The multi-agency database manipulation of Plaintiff's official credentials detailed in **Exhibit E** — coordinated between County management and the Illinois Department of Public Health (IDPH) during Director Suzanne Malec-McKenna's very first week in office in October 2025 — is the type of activity prohibited by **Tampering with Public Records,** 720 ILCS 5/32-8. This scheme was designed to harm Plaintiff's credibility as an Environmental Engineer. This pattern coincided with the Illinois Department of Insurance's rejection of service on Liberty Mutual on February 4, 2026 **(Ex. F-11).** A public official's active interference with service of process in a civil lawsuit is the type of activity prohibited by **Official Misconduct,** 720 ILCS 5/33-3, especially when **the agency accepted $40 to effect**

**service** on Plaintiff's second attempt. The agency unusually overnighted the letter to the process server's Seattle, Washington's Headquarters on February 13, 2026 **(see Exs. F-7, F-8).**

When multiple related events occur simultaneously between multiple actors, it is evidence of regular coordination. This pattern later escalated with Liberty Mutual's May 11, 2026 Motion To Dismiss the prior lawsuit which was filed during a court-ordered stay of proceedings – is the type of conduct prohibited by **§§ 1983 and 1985(2);** 18 U.S.C. § 1512(b) **(Witness/ Victim Tampering).** This scheme was designed to pressure Plaintiff immediately after his resignation. Liberty Mutual provided immediate, chronological verification of their regular corporate-municipal *'meeting of the minds."* Because Liberty Mutual actively abandoned procedural norms to advance the goals of the municipal suppression timeline, this defiance stands as permanent, docketed proof of a coordinated civil rights conspiracy (see Dkt 36, pgs 2, 6, prior lawsuit). *Spiegel v. McClintic,* No. 18-1070 (7th Cir. 2019).

Notably, the private corporate defendants' conduct is of the type prohibited by **Identity Theft,** 720 ILCS 5/16-30, **Insurance Fraud**, 720 ILCS 5/17-10.5, and **Fraud on a Governmental Entity,** 720 ILCS 5/46-1.1. Specifically, by unlawfully acquiring and transmitting Plaintiff's confidential, personal insurance data — confessed by the landlord's sister-attorney's explicit recording — private corporate actors utilized deceptive methods to protect real estate valuations and shield a global insurance carrier from exposure **(Marquee Exhibit C)**. **Marquee Exhibit D** is Liberty Mutual's August 27, 2025 formal response to the IDOI's investigation of Plaintiff's complaints including **Ex. C.** Liberty Mutual intentionally misled the IDOI which resulted in the agency's finding that no violations occurred, **Exhibit F-12.**

**Count II states a claim.**

## V. Conclusion

In the final analysis, this ***Garcetti*** argument itself further reveals that Defendant continues to show deliberate indifference to Plaintiff's constitutional rights exercised outside of work related to serious public safety concerns. A municipality cannot escape liability under *Monell* for fostering a culture in which its Director acts under color of state law with other State and corporate actors to suppress those rights (**Exhibits A, E, F-11, F-12).**

While the City of Chicago retains direct enforcement authority over the physical property site — which Plaintiff activated by filing multiple 311 safety complaints, a complaint to the IDOI, and a formal police report during Summer of 2025 — it was Defendant Cook County that affirmatively deployed its sweeping, cross-agency authority to suppress those very protections. Plaintiff's detailed description of the infrastructure hazard — an industrial-grade 600-amp main drenched in raw sewage, positioned directly beneath a drenched 200-amp fuse box, with a 2-inch commercial gas main sandwiched between them, located a mere 80 feet from the active CTA Red Line public transit grid — stands forever as a record of institutional knowledge and their deliberate indifference to a known, obvious, preventable, and recognized public safety hazard **(Marquee Exhibits 1 to 5 on Docket #14 of the prior lawsuit).**

By intentionally dismantling the public health enforcement mechanisms to protect an elite financial loop, Defendant's conscience shocking misconduct directly created and heightened an imminent threat to commuter and community safety. Consequently, this case presents an extraordinary, historically unique set of **State-Created Danger theories** that are actionable and testable by future plaintiffs on this Court's active docket. *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989); *Monfils v. Taylor,* 165 F.3d 511 (7th Cir. 1998).

This **circular trap** was executed by Defendant with full knowledge of its illegality: deny all internal remedies, impugn Plaintiff's credibility, and reject all possibility of a lawful separation to force litigation, and use such compelled litigation to forever mark Plaintiff as "dishonest." Exemplary and punitive damages should remain against future individual and private corporate defendants, as their rejection of resolution despite the evidence increases the harm.

The County's Motion should therefore be denied. This Court should Order Cook County to Answer the Second Amended Complaint, the Main Exhibits, and supporting evidence. Discovery should proceed. If the Court finds any claim deficient, Plaintiff requests leave to amend. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago,* 786 F.3d 510, 519–20 (7th Cir. 2015).

On September 8, 2026, Plaintiff informed counsel for Cook County that a subsequent amendment would likely name the Director individually. The parties, mutually, will no longer make joint filings as of October 20, 2026. Amendment is not futile and claims can be added as well **(See Ex. F-4; USERRA).** Defendant should have 14 days to *optionally* Reply.

*For in the end, law may guide, but conscience is all.*

Respectfully submitted,

/s/ Brian A. Crofoot, Pro Se Plaintiff

**Address:** 3847 Lorain Ave. Lorain, OH 44055

**Email:** crofoot.bc@gmail.com

**Phone:** 440-258-0207

**Dated:** October 21, 2026

### VI. Certificate of Service

I, Brian Alan Crofoot, hereby certify that on October 21, 2026, a true and correct copy of Plaintiff's Opposition to Defendant's Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

____________________

/s/ Brian Alan Crofoot

Plaintiff, Pro se

3847 Lorain Ave.

Lorain, OH 44055

**Email:** crofoot.bc@gmail.com

**Phone:** 440-258-0207